ORAL ARGUMENT NOT YET SCHEDULED
No. 25-5410

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

MASSACHUSETTS COALITION FOR IMMIGRATION REFORM, et al,
*Plaintiffs-Appellants,*

v.

DEPARTMENT OF HOMELAND SECURITY, et al.,
*Defendants-Appellees*

Appeal from the United States District Court
for the District of Columbia
No. 1:20-cv-03438 (Hon. Trevor N. McFadden)

# OPENING BRIEF FOR PLAINTIFFS-APPELLANTS

JOSEPH SCOTT ST. JOHN*
ST. JOHN LLC
1701 Jefferson Avenue
New Orleans, LA 70115
(410) 212-3475
scott@stjohnlaw.com

**Counsel of Record*

COLIN M. FARNSWORTH
CENTER FOR IMM. STUDIES
1629 K Street, NW, Suite 600
Washington, DC 20006
(202) 466-8185
cmf@cis.org

March 16, 2026

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(l), Appellants submit this Certificate as to Parties, Rulings, and Related Cases.

### A. Parties and Amici

1. Appellants are the Massachusetts Coalition for Immigration Reform, Kevin Lynn, Linda Huhn, Rob Meyer, Steven Chance Smith and Gail Getziller. Massachusetts Coalition for Immigration Reform is a private, non-profit association that has no parent companies and there are no publicly held companies that have a 10 percent or greater ownership interest in it. Kevin Lynn, Linda Huhn, Rob Meyer, Gail Getzwiller, and Steven Chance Smith are private individuals.

2. Appellees are the U.S. Department of Homeland Security, U.S. Department of State, and U.S. Department of Justice. They are agencies of the federal government.

3. There are no intervenors in this action and there were none in the district court. The amici curiae in the district court were the Immigration Reform Law Institute and the International Refugee Assistance Project. To Appellants knowledge, both amici are private, non-profit organizations.

### B. Rulings Under Review

The rulings under review are:

1. The district court's August 11, 2022, Memorandum Order (Dkt. 27) (JA___-___) granting partial dismissal of the Appellant's claims in *Massachusetts Coalition for Immigration Reform v. Department of Homeland Security*, No. 1:20-cv-3438-TNM (D.D.C.) (McFadden, J.), and published at 621 F.Supp.3d 84; and

2. The district court's September 18, 2025, Order (Dkt. 97) (JA___-___) dismissing the case as moot, with an associated Memorandum Opinion (Dkt. 96) (JA___-___) in *Massachusetts Coalition for Immigration Reform v. Department of Homeland Security*, No. 1:20-cv-3438-TNM (D.D.C.) (McFadden, J.), published at 800 F.Supp.3d 134.

### C. Related Cases

There are no related cases.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Appellants make the following disclosures:

1. Appellant Massachusetts Coalition for Immigration Reform ("MCIR") is a private, non-profit association that has no parent companies and there are no publicly held companies that have a 10 percent or greater ownership interest in it. The members of MCIR are citizens united by their belief that record levels of mass immigration into the United States in recent years, both legal and illegal, have distinctly negative effects on our environment and quality of life, as well as on taxpayers and the wages of working Americans. Dkt. 17 (JA___). No member has issued shares or debt securities to the public.

2. Appellants Kevin Lynn, Linda Huhn, Rob Meyer, Gail Getzwiller, and Steven Chance Smith are private individuals and, as such, are not subsidiaries or affiliates of a publicly owned corporation and there is no publicly held corporation that owns ten percent or more of any stock issued by them.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, ETC. ............................... I

CORPORATE DISCLOSURE STATEMENT ........................................ III

TABLE OF CONTENTS ........................................................................IV

TABLE OF AUTHORITIES ....................................................................VI

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............2

STATEMENT OF THE CASE ................................................................3

SUMMARY OF ARGUMENT ................................................................11

STANDARD OF REVIEW.....................................................................13

ARGUMENT .........................................................................................13

I. APPELLANTS PROPERLY CHALLENGED DHS'S POLICY OF NOT PERFORMING A NEPA ANALYSIS FOR IMMIGRATION-RELATED ACTIONS ...........................................................................................13

A. An agency's compliance with NEPA's "methods and procedures" mandate is judicially reviewable. ...............................................13

B. DHS's NEPA methods and procedures violate NEPA and the APA. 15

C. The district court erred in dismissing Count I for lack of final agency action. .......... 17
1. The Instruction is a final agency action that substantively fails to comply with NEPA. .......... 17
2. The Instruction is reviewable regardless of whether it is a final agency action. .......... 22

II. THIS CASE IS NOT MOOT. .......... 25
A. The district court failed to correctly apply the burdens of establishing mootness. .......... 25
B. The district court acknowledged the MPP termination remains in partial effect. .......... 27
C. The district court improperly rejected available relief against the ongoing, overarching policy .......... 29

CONCLUSION .......... 32

CERTIFICATE OF COMPLIANCE .......... 34

CERTIFICATE OF SERVICE .......... 35

ADDENDUM: STATUTES AND REGULATIONS .......... 36

## TABLE OF AUTHORITIES

### Cases

*American Airlines, Inc. v. TSA*, 665 F.3d 170 (D.C. Cir. 2011)12, 18, 19, 21, 22, 23, 24

*Bennett v. Spear*, 520 U.S. 154 (1997)............................................17, 22

**Calvert Cliffs Coordinating Committee v. AEC,* 449 F.2d 1109 (D.C. Cir. 1971) ..............................................................1, 11, 14

*Castaneira v. Noem*, 138 F.4th 530 (D.C. Cir. 2025)..............................21

*Comm. on the Judiciary v. Miers*, 542 F.3d 909 (D.C. Cir. 2008) ..........28

*Crowley Gov't Servs. v. GSA*, 143 F.4th 518 (D.C. Cir. 2025) ................28

*Defenders of Wildlife, Inc. v. ESSA*, 659 F.2d 168 (D.C. Cir. 1981)...5, 29

*Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316 (D.C. Cir. 2009)......................................................................13, 29

*Ethyl Corp. v. EPA*, 306 F.3d 1144 (D.C. Cir. 2002)...............................20

*FBI v. Fikre*, 601 U.S. 234 (2024)...................................................25, 26

*FCA v. Dist. of Columbia*, 2026 U.S. Dist. LEXIS 22596 (D.D.C. Feb. 3, 2026).......................................................................27

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167 (2000)......................................................................26

**Hanly v. Kleindeinst*, 471 F.2d 823 (2d Cir. 1972)............ 1, 4, 11, 14, 18

*Imm. Defs. L. Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025) ....................27

*Louisiana v. Biden*, 45 F.4th 841 (5th Cir. 2022)...................................24

* Authorities upon which we chiefly rely are marked with asterisks

*Louisiana v. Biden*, 543 F. Supp. 3d 388 (W.D. La. 2021). ....................23

*Louisiana v. Biden*, 64 F.4th 674 (5th Cir. 2023) .................................24

*Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990) .................................23

*Maldonado v. District of Columbia*, 61 F.4th 1004 (D.C. Cir. 2023)......31

*Marin Audubon Society v. FAA*, 121 F.4th 902 (D.C. Cir. 2024) ............7

*Momenian v. Davidson*, 878 F.3d 381 (D.C. Cir. 2017) ...........................5

*Motor Vehicle Mfrs Ass'n v. State Farm*, 463 U.S. 29 (1983) ..........16, 22

*NRDC v. SEC*, 606 F.2d 1031 (D.C. Cir. 1978)........................................4

**Oceana, Inc. v. Locke*, 670 F.3d 1238 (D.C. Cir. 2011).............19, 20, 22

*Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998).......................23

*Patel v. Lyons*, 2026 U.S. Dist. LEXIS 43521 (D.D.C. Feb. 27, 2026).........................................................................................27

*PETA v. USDA*, 918 F.3d 151 (D.C. Cir. 2019).......................................13

*Public Citizen, Inc. v. FERC*, 92 F.4th 1124 (D.C. Cir. 2024) ...............26

*Rhea Lana, Inc. v. DoL*, 824 F.3d 1023 (D.C. Cir. 2016)........................13

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989).........4

**Safari Club Int'l v. Jewell*, 842 F.3d 1280 (D.C. Cir. 2016)...........12, 29

*Sierra Club v. Andrus*, 581 F.2d 895 (D.C. Cir. 1978)...........................14

*Sierra Club v. FERC*, 827 F.3d 36 (D.C. Cir. 2016)...............................32

*Whitewater Draw Natural Resources Conservation District v. Mayorkas*, 5 F.4t h 997 (9th Cir. 2021) ............................................25

**Statutes**

16 U.S.C. §1853 .................... 20

28 U.S.C. §1291 .................... 2

28 U.S.C. §1331 .................... 2

42 U.S.C. §4321 .................... 3

42 U.S.C. §4331 .................... 3

42 U.S.C. §4332 .................... 1, 4, 5, 10, 11, 13, 17

42 U.S.C. §7525 .................... 20

5 U.S.C. § 706 .................... 2, 10

5 U.S.C. §704 .................... 12, 22

**Regulations**

40 CFR 1505.1 .................... 6, 9

40 CFR 1507.3 .................... 6, 7, 9

40 CFR 1508.18 .................... 10

69 Fed. Reg. 33043 (June 14, 2004). .................... 5, 6

71 Fed. Reg. 16790 (Apr. 4, 2006) .................... 5

79 Fed. Reg. 32563 (June 5, 2014) .................... 6, 7, 15

79 Fed. Reg. 70538 (Nov. 26, 2014) .................... 7

86 Fed. Reg. 46906 (Aug. 20, 2021 .................... 8

## INTRODUCTION

At stake in this case is the future of NEPA review by the courts. NEPA requires agencies to adopt "methods and procedures which will ensure that … environmental amenities and values may be given appropriate consideration…." 42 U.S.C. §4332(2)(B). And NEPA's landmark cases, *Calvert Cliffs Coordinating Comm. v. AEC,* 449 F.2d 1109 (D.C. Cir. 1971), and *Hanly v. Kleindeinst*, 471 F.2d 823 (2d Cir. 1972), made clear the statute implies a threshold level of procedures, and an agency's compliance with that scheme is judicially reviewable. Indeed, without judicial review of both an agency's procedures and the resulting agency actions, NEPA's action forcing provisions would be "a paper tiger." *Calvert Cliffs*, 449 F.2d at 1114. More recent cases indicate NEPA's statutory language contemplates a complete regulation, with triggers and identifiable standards for any case-by-case deviation.

The district court nevertheless held that DHS's methods and procedures—which generally determine whether the agency will perform an environmental analysis—are unreviewable. That was error, and it invites agencies—which are currently under executive mandate to revise their procedures—to circumvention of NEPA.

## JURISDICTIONAL STATEMENT

The district court had federal-question jurisdiction pursuant to 28 U.S.C. §1331 because the underlying suit alleged violations of the Administrative Procedure Act, 5 U.S.C. §706. Dkt. 17 (JA___). The district court entered a "final, appealable order" dismissing the case as moot on September 18, 2025. Dkt. 97 (JA___). Appellants timely filed a notice of appeal on November 16, 2025. Dkt. 98 (JA___, ___). This Court has appellate jurisdiction pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the district court properly dismissed Count I on the basis that DHS's NEPA methods and procedures were not themselves a final agency action, despite Appellants also challenging discrete final agency actions pursuant to those methods and procedures?

2. Whether the district court erred by dismissing this case as moot after determining that the agency acted unlawfully with respect to actions challenged in Counts II and III?

## STATEMENT OF THE CASE

### NATIONAL ENVIRONMENTAL POLICY ACT

By the late 1960s, Congress was growing increasingly concerned with environmental degradation. But it recognized that industrial activity was not the only culprit. Government agencies, too, often acted with little concern for the environmental impact of their actions. Congress responded with the National Environmental Policy Act of 1969, Pub. L. 91-190, 83 Stat. 852 ("NEPA") (codified as amended at 42 U.S.C. §4321 *et seq.*).

Congress made plain its purpose: "recognizing the profound impact of man's activity on the interrelations of all components of the natural environment, *particularly the profound influences of population growth*, high-density urbanization, industrial expansion, resource exploitation, and new and expanding technological advances," Congress declared

> that it is the continuing policy of the Federal Government … to use all practicable means and measures … in a manner calculated to foster and promote the general welfare, to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans.

42 U.S.C. §4331(a) (emphasis added). "The sweeping policy goals

announced in [§4331] are ... realized through a set of 'action forcing' procedures that require that agencies take a 'hard look' at environmental consequences, and that provide for broad dissemination of relevant environmental information." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) (citation omitted).

"Although these procedures are almost certain to affect the agency's substantive decision, … NEPA itself does not mandate particular results, but simply prescribes the necessary process." *Id.* As relevant here, the statutorily required process includes a "systematic approach" to environmental analysis, and a mandate that agencies "identify and develop methods and procedures … which will ensure that … environmental amenities and values may be given appropriate consideration in decision-making." 42 U.S.C. §4332.

These provisions have "far broader applicability than the impact statement requirement." *NRDC v. SEC*, 606 F.2d 1031, 1048 (D.C. Cir. 1978). They mandate at least "rudimentary procedures … designed to assure a fair and informed preliminary decision" about the significance of a proposed action, *Hanly v. Kleindeinst*, 471 F.2d 823, 835 (2d Cir. 1972), and thus the type of environmental analysis that is required, *see*

42 U.S.C. §§4332(C), 4336. And agencies are directed to apply those mandates "to the fullest extent possible." 42 U.S.C. §§4332.

## DHS's Implementation of NEPA[1]

The Department of Homeland Security ("DHS") accordingly proposed a "directive containing policy and procedures for implementing [NEPA] …." 69 Fed. Reg. 33043, 33044 (June 14, 2004). DHS described its mission as including "ensur[ing] safe and secure borders, facilitate[ing] lawful immigrants and visitors, and promot[ing] the free flow of commerce among nations." *Id.* As finalized, that directive "establish[ed] policy and procedures to ensure the integration of environmental considerations into [DHS] mission planning and project decision making." 71 Fed. Reg. 16790 (Apr. 4, 2006). DHS made clear the "[s]ubstantive or procedural requirements in [that] directive appl[ied] to

[1] In reviewing a dismissal for failure to state a claim, this Court "accept[s] the plaintiffs' factual allegations as true and draw[s] all reasonable inferences in a plaintiff's favor." *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017). Likewise, to confirm that Appellant's challenge includes an overarching policy, the Court looks to the allegations in the complaint. *See Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1287 (D.C. Cir. 2016); *Defenders of Wildlife, Inc. v. ESSA*, 659 F.2d 168, 175 (D.C. Cir. 1981). The facts are accordingly drawn from Appellants' First Amended Complaint ("FAC") Dkt. 17.

the program planning and project development in all DHS directorates and organization elements." 69 Fed. Reg. at 33044.

In 2014, DHS proposed revisions to its Directive and the accompanying Instruction. 79 Fed. Reg. 32563 (June 5, 2014). The agency explained "[t]he Directive and Instruction establish the policy and procedures DHS follows to comply with NEPA … and the CEQ regulations…." *Id.* They "therefore must be read in conjunction with the CEQ regulations." *Id.* (citing 40 CFR 1505.1 and 1507.3). Those regulations required, *inter alia*, the adoption of NEPA procedures:

> Agencies shall adopt procedures (§1507.3) to ensure that decisions are made in accordance with the policies and purposes of the Act. Such procedures shall include but not be limited to:
> (a) Implementing procedures under section 102(2) to achieve the requirements of sections 101 and 102(1).
> (b) Designating the major decision points for the agency's principal programs likely to have a significant effect on the human environment and assuring that the NEPA process corresponds with them.
> (c) Requiring that relevant environmental documents, comments, and responses be part of the record in formal rulemaking or adjudicatory proceedings.

40 CFR 1505.1. Further:

> Agency procedures … shall include:
>
> (1) Those procedures required by §§1501.2(d), 1502.9(c)(3), 1505.1, 1506.6(e), and 1508.4.

> (2) Specific criteria for and identification of those typical classes of action:
>
> (i) Which normally do require environmental impact statements.
>
> (ii) Which normally do not require either an environmental impact statement or an environmental assessment (categorical exclusions (§1508.4)).
>
> (iii) Which normally require environmental assessments but not necessarily environmental impact statements.

40 CFR 1507.3(b).[2]

Following notice and comment, DHS finalized its Directive and Instruction. 79 Fed. Reg. 70538 (Nov. 26, 2014). Although DHS has vast responsibilities for immigration and border-control, the Instruction does not include "any instructions to agency personnel, as to how to either conduct an environmental impact statement or an environmental assessment for immigration related actions … or as to what categorical exclusion might apply when it considers the adoption of an immigration related action." FAC ¶70 (JA___).

---

[2] This Court subsequently held CEQ "had no lawful authority to promulgate these regulations." *Marin Audubon Society v. FAA*, 121 F.4th 902, 914 (D.C. Cir. 2024). Given DHS's express statement that its Directive and Instruction "must be read in conjunction with the CEQ regulations," 79 Fed. Reg. 32563, the CEQ regulations are nevertheless informative.

DHS's immigration-related NEPA analyses have accordingly been—at best—erratic. In several rulemakings, NEPA has only been referenced in *post hac* responses to comments about the lack of a NEPA analysis. Even then, DHS only cited categorical exclusions that have no obvious applicability. FAC ¶¶73-81 (JA___-___). More recently, DHS declared that "NEPA does not apply to a rule intended to change a discrete aspect of an immigration program." FAC ¶79 (quoting 86 Fed. Reg. 46906, 46939 (Aug. 20, 2021)).

## PROCEEDINGS BELOW

Appellants MCIR and Lynn filed this suit on November 24, 2020, alleging that DHS has never prepared an Environmental Impact Statement ("EIS") or an Environmental Assessment ("EA") in connection with any of its ongoing immigration-related actions. Appellants tied that failure to deficiencies in DHS's NEPA procedures, as reflected in DHS's Instruction.

Another suit that Defendants considered "virtually identical" was consolidated with this suit. Appellants then filed an Amended Complaint alleging DHS's Instruction omits any mention of immigration. Dkt. 17 (JA___-___). Appellants noted DHS made that omission despite the

regulation of entry and settlement of foreign nationals being a major component of DHS's statutory mission. Indeed, regulation of the border and immigration are among the "principal programs" of DHS and "typical classes of action" for the agency. *Id.* (quoting 40 CFR 1505.1(b) and 40 CFR 1507.3(b)(2)). Appellants accordingly alleged the Instruction is arbitrary, capricious, otherwise not in accordance with law, or without observance of procedure required by law. *Id.* Appellants then challenged DHS's "suspension of all border wall projects" (Count II), DHS's termination of "Remain in Mexico" including the Migrant Protection Protocols ("MPP") (Count III), multiple other border and immigration-related actions undertaken without any environmental analysis (Counts IV – X), and DHS's failure to prepare a programmatic EIS (Count XI). FAC (JA___-___).

Defendants moved to dismiss. As relevant here, the district court concluded the DHS Instruction is not a final agency action reviewable under the APA. Dkt. 27 (JA___-___). Count I was therefore dismissed for failure to state a claim.

Following a two-day hearing that included testimony by former senior government officials, the district court concluded Plaintiff Smith

had standing to challenge the halt of border wall construction challenged in Count II and the MPP-termination portion of Count III. Dkt. 81 (JA___-___). Turning to the merits, the court held both challenged decisions constitute "major Federal actions" because their effects "may be major" and "are potentially subject to federal control and responsibility." Dkt. 81 (JA___) (quoting 42 U.S.C. §4332(C) and 40 CFR 1508.18). The court then held that neither decision falls within one of NEPA's exceptions. *Id.* DHS was therefore obligated to perform a NEPA analysis, but the agency concededly failed to do so. *Id.* The court's ultimate conclusion was that DHS promulgated its decisions "without observance of procedure required by law." *Id.* (quoting 5 U.S.C. § 706(2)(D)).

Almost a year later, the district court dismissed this case as moot. Dkt. 97 (JA___). The court explained that when President Trump came into office, he ordered DHS to construct physical barriers at the border and resume MPP. Dkt. 96 (JA___). Moreover—in an apparent first—DHS had prepared an EIS for the resumption of MPP. (JA___). The district court then held that none of the exceptions to mootness were applicable. And it further rejected Appellants' request for higher-level declaratory

relief as attempting to relitigate the previously dismissed counts, stating that "each [action] required its own individual challenge." (JA___).

## SUMMARY OF ARGUMENT

NEPA mandates that "all agencies of the Federal Government ***shall*** … identify and develop methods and procedures … which will ensure that … environmental amenities and values may be given appropriate consideration in decision-making…." 42 U.S.C. §4332(2)(B). That mandate contemplates at least "rudimentary procedures … designed to assure a fair and informed preliminary decision" about the significance of a proposed action. *Hanly*, 471 F.2d at 835. And compliance with that mandate is judicially reviewable. *See, e.g.*, *Calvert Cliffs Coordinating Committee v. AEC*, 449 F.2d 1109 (D.C. Cir. 1971).

DHS has set forth its "methods and procedures" in an Instruction it published in the *Federal Register*. Appellants alleged DHS failed to perform any environmental analysis on certain immigration-related actions, and they concluded DHS's "failure to attempt to conduct any sort of NEPA analysis … would not have happened if DHS's Instruction Manual had set up a rational framework to conduct analysis of the impacts of immigration related actions." FAC ¶219 (JA___). Appellants

accordingly alleged the Instruction was arbitrary, capricious, and contrary to law for failing to include any instructions regarding the environmental analyses of immigration, despite immigration-related actions being a vast swath of DHS's operations.

The district court erred by dismissing that challenge (Count I) for lack of final agency action. Although Appellants believe the Instruction qualifies as a final agency action, whether that's correct ultimately doesn't matter. The Instruction was also challenged in connection with final agency actions applying it. It's therefore reviewable. *See* 5 U.S.C. §704; *American Airlines, Inc. v. TSA*, 665 F.3d 170 (D.C. Cir. 2011).

This litigation isn't moot for the same reason. "It is well-established that if a plaintiff challenges both a specific agency action and the *policy* that underlies that action …, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot." *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1287 (D.C. Cir. 2016). Moreover, one of the specific agency actions (the MPP termination, challenged in Count III) remains partially in effect. Relief is therefore available, and this case is not moot.

## STANDARD OF REVIEW

This Court reviews de novo a dismissal for lack of final agency action. *Rhea Lana, Inc. v. DoL*, 824 F.3d 1023, 1026 (D.C. Cir. 2016). This Court likewise reviews de novo a dismissal for lack of subject matter jurisdiction based on mootness. *PETA v. USDA*, 918 F.3d 151, 156 (D.C. Cir. 2019) (citing *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009)).

## ARGUMENT

### I. Appellants properly challenged DHS's policy of not performing a NEPA analysis for immigration-related actions

#### A. An agency's compliance with NEPA's "methods and procedures" mandate is judicially reviewable.

Start with the statute. Congress directed agencies to use "a systematic, interdisciplinary approach … in decision-making which may have an impact on man's environment." 42 U.S.C. §4332(2)(A). To that end, Congress further directed that "all agencies of the Federal Government ***shall*** … identify and develop methods and procedures, in consultation with the Council on Environmental Quality … which will ensure that … environmental amenities and values may be given appropriate consideration in decision-making…." 42 U.S.C. §4332(2)(B).

Those mandates are fundamental to NEPA's scheme: they appear in the same section that mandates Environmental Impacts Statements. And they carry no less force.

Just like project-specific environmental analyses, an agency's compliance with the "methods and procedures" mandate is subject to judicial review. Indeed, shortly after NEPA was adopted, the Second Circuit explained the mandate contemplates at least "rudimentary procedures … designed to assure a fair and informed preliminary decision" about the significance of a proposed action, and the complete absence of "methods and procedures" violates NEPA. *See Hanly*, 471 F.2d at 835. This Court reached essentially the same conclusion in *Sierra Club v. Andrus*, 581 F.2d 895, 904-907 (D.C. Cir. 1978), *rev'd on other grounds*, 442 U.S. 347 (1979).

The adequacy of the "methods and procedures" an agency adopts is also subject to review. In *Calvert Cliffs*, this Court reviewed the AEC's "rules which govern consideration of environmental values in all … individual decisions." 449 F.2d at 1116. After determining that the AEC's rules fell short of NEPA's requirements, it held the AEC "must revise its rules governing consideration of environmental issues." *Id.* at 1129. And

it reached that conclusion despite the absence of any particular decision by the AEC. *Id.* at 1115-1116.

### B. DHS's NEPA Methods and Procedures violate NEPA and the APA.

DHS's current NEPA procedures are set forth in Directive 023–01, Rev. 01 and Instruction Manual 023–01–001–01, Rev. 01. (JA___-___). "Together, the Directive and Instruction serve as [DHS's] procedures for implementing [NEPA] and the Council on Environmental Quality (CEQ) regulations for implementing the procedural provisions of NEPA (40 CFR Parts 1500–1508)." 79 Fed. Reg. at 32563. As DHS put it, those documents "establish the policy and procedures DHS follows to comply with [NEPA]." Dkt. 19-1 (JA___).

Despite DHS's vast responsibilities for immigration—its components include U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), and U.S. Citizenship and Immigration Services ("USCIS")—the Instruction makes no reference to immigration-related actions. That's because in drafting the Instruction, "DHS only considered the potential environmental consequences of ICE and CBP for construction related actions—even though that is only a small part of those agencies' missions." FAC ¶68

(JA___). And "DHS never considered the potential environmental effects of the entire mandate of USCIS at all." FAC ¶68 (JA___). So, not surprisingly, the Instruction "failed to adopt any instructions to agency personnel, as to how to either conduct an environmental impact statement or an environmental assessment for immigration related actions environmental analysis, or as to what categorical exclusion might apply when it considers the adoption of an immigration related action." FAC ¶70 (JA___). Appellants alleged those failures were arbitrary, capricious, and contrary to NEPA's statutory commands. *E.g.*, FAC ¶¶69, 141-142, 225 (JA___, ___-___, ___); *see also Motor Vehicle Mfrs Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) ("Normally, an agency rule would be arbitrary and capricious if the agency … entirely failed to consider an important aspect of the problem.").

Appellants next alleged they were harmed by the effects of actions that were not subject to a NEPA analysis, including the halt of border wall construction (Count II) and the termination of MPP (Count III). FAC ¶219 (JA___). Appellants concluded that DHS's "failure to attempt to conduct any sort of NEPA analysis … would not have happened if DHS's

Instruction Manual had set up a rational framework to conduct analysis of the impacts of immigration related actions." FAC ¶219 (JA___).

### C. The district court erred in dismissing Count I for lack of final agency action.

The district court dismissed Appellants' challenge to the Instruction because it concluded the Instruction "fails both parts of [the *Bennett v. Spear*, 520 U.S. 154 (1997)] test for final agency action." Dkt. 27 (JA___). That was error.

#### 1. The Instruction is a final agency action that substantively fails to comply with NEPA.

As relevant here, Appellants argue that DHS's "Instruction is contrary to the statutory commands that DHS "shall … use a systematic … approach," "identify and develop methods and procedures," and "include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement" regarding environmental effects. 42 U.S.C. §4332.

The Second Circuit long-ago set forth the minimum expectations for complying with that mandate. "[A]n agency, in making a threshold determination as to the 'significance' of an action, is called upon to review

in a general fashion the same factors that would be studied in depth for preparation of a detailed environmental impact statement." *Hanly*, 471 F.2d at 835. NEPA accordingly "requires that some rudimentary procedures be designed to assure a fair and informed preliminary decision." *Id.* "Otherwise the agency, lacking essential information, might frustrate the purpose of NEPA by a threshold determination that an impact statement is unnecessary." *Id.*

The Second Circuit was doubtless correct that NEPA mandates an *ex ante* description of methods and procedures. That's implicit in the statutory mandates for a "systematic" approach, and the overarching command to comply with those mandates "to the fullest extent possible." 42 U.S.C. §4332. And this Court's decisions addressing similar statutory mandates confirm it.

*American Airlines, Inc. v. TSA*, 665 F.3d 170 (D.C. Cir. 2011), is especially instructive. In that case, American challenged TSA's denial of reimbursement for certain security improvements. The statute authorizing reimbursement required that TSA "shall establish a prioritization schedule for airport security improvement projects" and

"must base that prioritization schedule on "risk and other relevant factors." *Id.* at 175.

The Court explained that "Congress's explicit mandate that TSA develop a prioritization list … carries with it the implication that the agency will actually follow that prioritization list in making its reimbursement decisions." *Id.* at 177. "And while there could be cases in which the agency finds that it must deviate from its general prioritization, the agency must 'adequately define the circumstances that trigger the case-by-case analysis,' and the agency must promulgate an 'identifiable standard' to guide those determinations." *Id.* at 178 (quoting *Oceana, Inc. v. Locke*, 670 F.3d 1238, 1241 (D.C. Cir. 2011)). TSA had not done so. "Rather, TSA … stated the prioritization list it created is merely a 'top-down' 'initial guide,' and it has expressly reserved the discretion to depart from the list on a case-by-case basis using a different, 'bottom-up' methodology when making actual funding decisions." *Id.* "Like the provision at issue in *Oceana, Inc.*, [*infra*,] TSA cannot make an exception to the prioritization list so vague or large as to make the rule meaningless." *Id.* The Court thus held TSA's prioritization schedule did not comply with the statute.

In the underlying precedent, *Oceana, Inc. v. Locke*, 670 F.3d 1238 (D.C. Cir. 2011), the statute required the Secretary of Commerce to "establish a ... methodology." *Id.* at 1239 (quoting 16 U.S.C. §1853(a)(11)). This Court reviewed cases establishing that, where further analysis is necessary, "[t]he agency must adequately define the circumstances that 'trigger' the case-by-case analysis, and it must set an 'identifiable standard' to guide its judgment when operating under that procedure." *Id.* at 1241 (internal citations omitted).

Going further back, *Ethyl Corp. v. EPA*, 306 F.3d 1144 (D.C. Cir. 2002), is also instructive. That case involved the Clean Air Act's mandate that EPA "shall by regulation establish methods and procedures for making tests…." *Id.* at 1148 (quoting 42 U.S.C. §7525(d)). This Court held that EPA's program "establish[ing] a framework for automobile manufacturers to develop their own tests, to be used once the EPA gives approval, case-by-case" was contrary to law. *Id.* at 1146, 1150. That's because "a promulgation of criteria for the later establishment of such methods" did not "establish … methods and procedures for making tests." *Id.* at 1150.

In this case, the district court acknowledged the Instruction included mandatory language, but it dismissed the Instruction as merely "implementing" NEPA. Dkt. 27 (JA___). It concluded "the Manual's illustrative list of actions that 'normally' receive an EIS, does not bind DHS components to act similarly in the future." Dkt. 27 (JA___). In doing so, the district court ignored the statutory mandate that DHS "utilize a systematic approach" and "identify methods and procedures," both to "the fullest extent possible."

"Congress's explicit mandate that [DHS] develop [methods and procedures] carries with it the implication that the agency will actually follow [those methods and procedures] in making its [environmental analyses]." *See American Airlines*, 665 F.3d at 177; *see also, e.g.*, *Castaneira v. Noem*, 138 F.4th 530, 551 (D.C. Cir. 2025) ("If the agency itself chooses to bind itself to published procedures, this choice means that it must then exercise its own discretion in accordance…."). Surely that mandate covers a DHS activity—immigration—that accounts for a vast swath of DHS's operations. *See* 40 CFR 1505.1. And surely DHS's Instruction setting forth the methods and procedures it "must" follow—published as "final" for over a decade—is its last word on that mandate.

That the Instruction fails to provide any identifiable standard for environmental decisions in immigration-related actions—again, a vast swath of DHS's operations—is a quintessential failure to consider an important aspect of the problem. *State Farm*, 463 U.S. at 43. And if DHS "components remain free to categorically exclude actions from environmental analysis, or not," Dkt. 96 (JA___), without the Instruction providing any "identifiable standard" or "trigger," *American Airlines*, 665 F.3d at 178 (quoting *Oceana*, 670 F.3d at 1241), then the Instruction is substantively contrary to NEPA's mandates, just as Appellants allege.

**2. The Instruction is reviewable regardless of whether it is a final agency action.**

It ultimately doesn't matter whether or not the Instruction is a final agency action. Either way, the Instruction is reviewable in connection with the specific agency actions Appellants challenged. The final agency action requirement derives from the first sentence of 5 U.S.C. §704: "[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review." *See Bennett*, 520 U.S. at 177-178. But the second sentence provides: "A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." And that second sentence

covers what Appellants did: they attacked specific agency actions for not having been subject to NEPA analysis, and they alleged that unlawful omission "would not have happened if DHS's Instruction Manual had set up a rational framework to conduct analysis of the impacts of immigration related actions." FAC ¶219 (JA___).

There's nothing novel about that attack. "If there is … some specific order or regulation, applying some particular measure across the board to all individual [actions in a particular category] … it can of course be challenged under the APA." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 890 n.2 (1990); *see also Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998) (noting that plaintiffs could challenge a forestry plan as part of a challenge to a final agency action implementing the plan). *American Airlines*, *supra*, exemplifies such a challenge. In that case, this Court held a letter denying reimbursement was a final agency action. 665 F.3d at 175. But the Court looked behind that letter to the overarching policy, which it ultimately held was contrary to the statute. *Id.* at 177.

A pair of Fifth Circuit cases highlights the way such a challenge works. In *Louisiana v. Biden* ("*Pause*"), a coalition of States successfully challenged an across-the-board "pause" of oil and gas leasing while only

challenging a handful of the underlying halted lease sales. 543 F. Supp. 3d 388, 413 (W.D. La. 2021). The Fifth Circuit vacated and remanded on the narrow question of whether "an unwritten agency policy, a written policy outside of the Executive Order, or the Executive Order itself" was the object of the injunction. *Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022). On remand, the district court reviewed the obvious evidence that an across-the-board policy existed, clarified precisely what it was enjoining, and granted summary judgment. 622 F. Supp. 3d 267 (W.D. La. 2022). In contrast, the Fifth Circuit rejected a challenge to social cost of carbon estimates not because the challenge was to an across-the-board agency action, but because the plaintiffs failed to identify a specific application of that across-the-board policy that injured them. *Louisiana v. Biden*, 64 F.4th 674, 682-683 & n.52 (5th Cir. 2023).

Here, like in *American Airlines* and the *Pause* litigation, Appellants attacked specific applications of DHS's across-the-board Instruction that they allege injured them. The across-the-board Instruction is challengeable as part of Appellants' challenge to any one of those applications. *See American Airlines, Inc.*, 665 F.3d 170 (reviewing compliance with statutory prioritization requirement when raised in the

context of a specific final agency action). So whether the Instruction itself is a "final agency action" ultimately doesn't matter. The district court's dismissal of Count I should be reversed.[3]

## II. This case is not moot.

Although Plaintiff Smith won on the merits of Counts II and III, the district court concluded the case was moot. It noted "the cancellations [of border wall construction] had been rescinded," "the Government is moving full steam ahead on its construction efforts," and "the MPP has been reinstated" or reimplemented. Dkt. 96 (JA___). That conclusion was based on multiple errors.

### A. The district court failed to correctly apply the burdens of establishing mootness.

Start with the "heavy" and "formidable burden" DHS bears to establish mootness. *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting

---

[3] *Whitewater Draw Natural Resources Conservation District v. Mayorkas*, 5 F.4th 997 (9th Cir. 2021), is thus distinguishable. In that case, the Ninth Circuit held the Instruction was not final agency action, and it concluded the plaintiffs had failed to identify any discrete agency action for which they also had standing. It did not hold the Instruction was not reviewable where, as here, it is challenged along with a discrete agency action applying it. In any event, *Whitewater Draw* is not binding on this Court.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 190 (2000)). DHS's "'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189).

*Sua sponte* applying pre-*Fikre* caselaw, the district court stated "the voluntary cessation doctrine 'does not apply automatically' any time a defendant decides to cease challenged conduct," and declined to apply it absent evidence of manipulation by the government. Dkt. 96 (JA___) (quoting *Public Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024)). But in *Fikre*, the Supreme Court applied the voluntary cessation doctrine to the government; it did so without any discussion of manipulation; and it found the government failed to meet its burden. The Court reiterated that "a defendant must prove no reasonable expectation remains that it will return to its old ways." 601 U.S. at 241. "That much holds for governmental defendants no less than for private ones." *Id.* Lest

there be doubt, the Court then re-emphasized that the rule applies "in *all* cases." 601 U.S. at 243 (emphasis added).[4]

### B. The district court acknowledged the MPP termination remains in partial effect.

Regardless of the burden, the facts establish that MPP hasn't been fully reimplemented. Rather—as the district court acknowledged—a different district court stayed the reimplementation. Dkt. 96 (JA___). The Ninth Circuit limited the scope of that stay pending appeal, which the district court said now "only applies to the parties in that case." *Id.* But the Ninth Circuit's order actually permits a glaring exception to the reimplementation of MPP: it provides that "no current or future clients of ImmDef shall be enrolled in MPP during the pendency of this appeal." *Imm. Defs. L. Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025).

---

[4] At least one district judge expressly recognized that *Fikre* clarified the applicability of the voluntary cessation doctrine to government actors. *See FCA v. Dist. of Columbia*, 2026 U.S. Dist. LEXIS 22596, at *24-25 (D.D.C. Feb. 3, 2026) (Friedrich, J.); *see also Patel v. Lyons*, 2026 U.S. Dist. LEXIS 43521, at *16-20 (D.D.C. Feb. 27, 2026) (Reyes, J., citing *Fikre* and applying the voluntary cessation doctrine to a government agency).

The number of covered "clients" is substantial. ImmDef's website claims that it delivers services to over 30,000 immigrants per year.[5] And Ninth Circuit appeals are famously long. The court's website states that civil oral arguments are approximately 6 to 12 months from the appeal date, with decisions issuing 3 months to a year later.[6] So a large number of ImmDef-affiliated immigrants are not subject to the reimplemented MPP.

That the MPP termination is presently in effect is in no way speculative. A declaration that the 2021 termination of MPP was unlawful—thereby restoring the original MPP—would provide some relief to Appellants. *See Comm. on the Judiciary v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) ("[W]e have long presumed that officials of the Executive Branch will adhere to the law as declared by the court."). And directly vacating and setting aside that termination would provide more. Plaintiffs claim against the MPP termination is not moot. *See Crowley Gov't Servs. v. GSA*, 143 F.4th 518, 526 (D.C. Cir. 2025) ("A case

---

[5] https://www.immdef.org/about

[6] https://www.ca9.uscourts.gov/general/faq/

becomes moot only when it is *impossible* for a court to grant *any* effectual relief whatever to the prevailing party.")

### C. The district court improperly rejected available relief against the ongoing, overarching policy.

The more fundamental problem was the district court's refusal to consider relief that was both sought and available. The district court correctly recognized that "a plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy." Dkt. 96 (JA___) (quoting *Del Monte*, 570 F.3d at 321). Indeed, "[i]t is well-established that if a plaintiff challenges both a specific agency action and the *policy* that underlies that action …, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot." *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1287 (D.C. Cir. 2016) (emphasis in original). That's precisely what Appellants did here.

To confirm that Appellant's challenge includes an overarching policy, the Court looks to the allegations in the complaint as amplified by the briefing on appeal. *See Safari Club*, 842 F.3d at 1287; *Defenders of Wildlife, Inc. v. ESSA*, 659 F.2d 168, 175 (D.C. Cir. 1981). Here, the complaint makes clear Appellants challenged DHS's underlying practice

of not performing the analysis required by NEPA in Count I and XI, and they further attacked that practice throughout the body of the complaint.

To that end, the complaint quotes a *Federal Register* publication in which DHS claimed "NEPA does not apply to a rule intended to change a discrete aspect of an immigration program because any attempt to analyze its potential impacts would be largely, if not completely, speculative." FAC ¶79 (JA___). That position "is contrary to both NEPA and NEPA precedent." FAC ¶80 (JA___). "The effects of DHS's NEPA procedures are to create and maintain a continuing *de facto* [policy] at DHS that a federal action inducing the mass entrance and settlement of foreign nationals does not have the potential to significantly impact the environment." FAC ¶86 (JA___). "This [policy] not only defies common sense and NEPA's mandate," but is demonstrably false. *Id.*

Appellants also linked the specific actions they challenged to that overarching policy. "No NEPA analysis of any of [the specifically challenged] actions was done whatsoever." FAC ¶219 (JA___). "The failure to attempt to conduct any sort of NEPA analysis … would not have happened if DHS's Instruction Manual had set up a rational framework to conduct analysis of the impacts of immigration related actions." FAC

¶219 (JA___). Appellants accordingly prayed for, *inter alia*, "a declaratory judgment that DHS's failure to address immigration in the Instruction Manual is arbitrary and capricious and in violation of its duties under the law both at the time DHS promulgated its NEPA procedures and under the law today," a corresponding injunction, and other relief. FAC (JA___).

The district court did not perform the analysis *Safari Club* requires. It didn't look to the complaint or the relief requested. It didn't acknowledge that Appellants challenged DHS's underlying failure to comply with NEPA and the agency's policy of not performing NEPA analyses for immigration-related actions. And it refused to acknowledge those challenges were baked into the counts on which Appellants prevailed, and advanced independently as Count I.[7]

---

[7] Appellants did identify an example of a recent immigration-related action for which no NEPA analysis was performed: Alligator Alcatraz. *See* Dkt. 96 (JA___). The district court declared that wasn't enough, and pointed to an DHS's NEPA analysis for the reimplementation of MPP. *Id.* That reversed the "heavy burden of proving mootness [which] falls with the party asserting a case is moot." *Maldonado v. District of Columbia*, 61 F.4th 1004, 1006 (D.C. Cir. 2023). And that the only immigration-related NEPA analysis anyone can identify was performed after this suit was filed for one of the programs being litigated is too cute by far, particularly given that Appellants demonstrated that no NEPA analysis

Conceptually, the district court apparently believed Appellants' legal injuries were just the environmental injuries flowing from the specifically challenged actions. But environmental and procedural injuries are distinct. *See Sierra Club v. FERC*, 827 F.3d 36, 44 (D.C. Cir. 2016) (distinguishing environmental injury from procedural injury). DHS has not complied with the substantive requirements of NEPA, such that Appellants' distinct NEPA injuries are not moot.

## CONCLUSION

For the foregoing reasons, this Court should REVERSE the district court's dismissal of Count I, VACATE the district court's judgment dismissing this case as moot, and REMAND for additional proceedings.

Given the already-lengthy pendency of this APA case, Appellants respectfully request that this Court order the district court to EXPEDTE proceedings on remand.

---

was performed for another immigration-related action. *See id.* It—at best—suggests a lack of consistency following from DHS's failure to create "methods and procedures" as required by 42 U.S.C. §4332(2)(B).

Respectfully Submitted,

/s/ *Joseph Scott St. John*
JOSEPH SCOTT ST. JOHN
Louisiana Bar No. 36682
**ST. JOHN LLC**
1701 Jefferson Avenue
New Orleans, LA 70115
Tel: 410-212-3475
scott@stjohnlaw.com

/s/ *Colin M. Farnsworth*
COLIN M. FARNSWORTH
**CENTER FOR IMM. STUDIES**
1629 K Street, NW, Suite 600
Washington, DC, 20006
Tel: 202-466-8185
Fax: 202-466-8076
cmf@cis.rog

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 6,063 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this initial brief has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Word.

*/s/ Joseph Scott St. John*

## CERTIFICATE OF SERVICE

I, Joseph S. St. John, of the law firm of St. John LLC., do hereby certify that I am on this date filing with the clerk of the Court the foregoing documents via the Court's ECF system, which will send electronic notification to all counsel of record.

SO CERTIFIED, this the 16th day of March, 2025.

*/s/ Joseph S. St. John*
.

Joseph Scott St. John (LA 36682)
St. John LLC
1701 Jefferson Avenue
New Orleans, LA 70115
Tel. 410-212-3475
scott@stjohnlaw.com

## ADDENDUM: STATUTES AND REGULATIONS

**Administrative Procedure Act (5 U.S.C. §704)**

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

**National Environmental Policy Act (42 U.S.C. §4332)**

The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this Act [42 USCS §§ 4321 et seq.], and (2) all agencies of the Federal Government shall—

**(A)** utilize a systematic, interdisciplinary approach which will ensure the integrated use of the natural and social sciences and the environmental design arts in planning and in decision-making which may have an impact on man's environment;

**(B)** identify and develop methods and procedures, in consultation with the Council on Environmental Quality established by title II of this Act [42 USCS §§ 4341 et seq.], which will ensure that presently unquantified environmental amenities and values may be given appropriate consideration in decision-making along with economic and technical considerations;

**(C)** consistent with the provisions of this Act [42 USCS §§ 4321 et seq.] and except where compliance would be inconsistent with other statutory requirements, include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on ….

*** * * * ***

Prior to making any detailed statement, the head of the lead agency shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of title 5, United States Code, and shall accompany the proposal through the existing agency review processes….