NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-5410

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MASSACHUSETTS COALITION FOR IMMIGRATION REFORM, et al.,
*Plaintiffs/Appellants*,

v.

DEPARTMENT OF HOMELAND SECURITY, et al.,
*Defendants/Appellees*.

Appeal from the United States District Court for the District of Columbia
No. 1:20-cv-03438 (Hon. Trevor N. McFadden)

**BRIEF FOR DEFENDANTS-APPELLEES**

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

EMILY A. POLACHEK
ERIKA DANIELLE NORMAN
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3143
Erika.norman@usdoj.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.     Parties and Amici**

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Plaintiffs-Appellants.

**B.     Rulings Under Review**

References to the rulings at issue appear in the Brief for Plaintiffs-Appellants.

**C.     Related Cases**

There are no related cases within the meaning of Circuit Rule 28(a)(1)(C).

/s/ *Erika Danielle Norman*
ERIKA DANIELLE NORMAN

Counsel for Appellees

i

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..................................................................................i

TABLE OF AUTHORITIES ...................................................................iv

GLOSSARY .........................................................................................xi

INTRODUCTION ..................................................................................1

STATEMENT OF JURISDICTION.........................................................2

STATEMENT OF THE ISSUES.............................................................2

PERTINENT STATUTES AND REGULATIONS ...................................3

STATEMENT OF THE CASE.................................................................3

I.       Legal Background................................................................3

         A.       National Environmental Policy Act. ...........................3

         B.       Administrative Procedure Act. ...................................5

II.      Factual Background and Proceedings Below. ........................5

SUMMARY OF ARGUMENT ................................................................9

STANDARD OF REVIEW ....................................................................12

ARGUMENT ........................................................................................12

I.       Plaintiffs' challenges to the 2021 termination of border wall construction and the Protocols (Counts II and III) are moot..........12

         A.       Actions taken by the Trump Administration in 2025 mooted Plaintiffs' NEPA challenges to the 2021 termination decisions.................................13

B.     Plaintiffs' challenge to the 2021 termination of border wall construction is also moot because the appropriations covered by that decision have now expired. .......................16

C.     The voluntary cessation exception does not apply.............................17

D.     Plaintiffs are wrong that pending litigation challenging the resumption of the Protocols means Count III is not moot...............................................................................22

E.     The district court was correct to reject Plaintiffs' arguments for relief based on unreviewable programmatic challenges to immigration policy................................24

II.     Plaintiffs did not establish redressability for Counts II and III. .....................27

III.     The Instruction Manual is not a final agency action. .....................................29

A.     DHS's Instruction Manual is not a final agency action. .....................30

1.     The Instruction Manual does not mark the consummation of DHS's decision-making under NEPA. ..................................................................31

2.     The Manual does not bind DHS with the force of law. ...................................................................33

B.     Plaintiffs forfeited the argument that the Instruction Manual is reviewable as an "intermediate procedural action."...................................................................37

C.     The Instruction Manual is not a reviewable intermediate procedural action in any event. ........................................38

CONCLUSION.................................................................................43

CERTIFICATE OF COMPLIANCE..................................................................44

# TABLE OF AUTHORITIES*

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
827 F.3d 100 (D.C. Cir. 2016) ...................................................................... 15

*\*Alaska v. U.S. Dep't of Agric.*,
17 F.4th 1224 (D.C. Cir. 2021) ............................................................. 10, 18

*Albina Head Start, Inc. v. U.S. Dep't of Health and Human Servs.*,
No. 25-5106, 2026 WL 473791 (Feb. 17, 2026) (per curiam) .......................... 21

*Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Employee Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004) ...................................................................... 38

*American Airlines, Inc. v. TSA,*
665 F.3d 170 (D.C. Cir. 2011) ................................................................. 36, 42

*Arab v. Blinken*,
600 F. Supp. 3d 59 (D.D.C. 2022) ...............................................................14

*Bahlul v. United States*,
77 F.4th 918 (D.C. Cir. 2023) ..................................................................... 20

*Baltimore Gas & Elec. Co. v. NRDC*,
462 U.S. 87 (1983) ................................................................................... 15

*\*Bennett v. Spear,*
520 U.S. 154 (1997) ...................................................................... 11, 30, 31

*Bronner on Behalf of Am. Stud. Ass'n v. Duggan*,
962 F.3d 596 (D.C. Cir. 2020) ..................................................................... 24

*\*Cal. Cmtys. Against Toxics v. EPA*,
934 F.3d 627 (D.C. Cir. 2019) ................................................................. 32, 34

*Calvert Cliffs Coordinating Committee v. AEC*,
449 F.2d 1109 (D.C. Cir. 1971) ................................................................... 35

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Campaign for Accountability v. U.S. Dep't of Just.*,
 155 F.4th 724 (D.C. Cir. 2025) ............................................................ 12

*Castaneira v. Noem*,
 138 F.4th 540 (D.C. Cir. 2025) ............................................................ 37

\*Catawaba Cnty. v. EPA*,
 571 F.3d 20 (D.C. Cir. 2009) .............................................................. 33

*Chichakli v. Tillerson*,
 882 F.3d 229 (D.C. Cir. 2018) ............................................................ 38

*Cierco v. Mnuchin*,
 857 F.3d 407 (D.C. Cir. 2017) ............................................................ 17

\*City of Houston v. Dep't of Hous. and Urb. Dev.*,
 24 F.3d 1421 (D.C. Cir.) ...................................................................... 17

*Clarian Health W., LLC v. Hargan*,
 878 F.3d 346 (D.C. Cir. 2017) ............................................................ 35

*Consumer Fed'n of America v. FCC*,
 348 F.3d 1009 (D.C. Cir. 2003) .......................................................... 40

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
 143 F.4th 518 (D.C. Cir. 2025) ............................................................ 21

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin*,
 452 F.3d 798 (D.C. Cir. 2006) ............................................................ 35

*Ctr. for Biological Diversity v. EPA*,
 861 F.3d 174 (D.C. Cir. 2017) ............................................................ 28

\*District of Columbia v. Air Fla., Inc.*,
 750 F.2d 1077 (D.C. Cir. 1984) ................................................... 11, 38

*Darby v. Cisneros*,
 509 U.S. 137 (1993) .................................................................... 31, 32

*Del Monte Fresh Produce Co. v. United States*,

570 F.3d 316 (D.C. Cir. 2009) ........................................................................ 12

*Doc Soc'y v. Rubio,*
    141 F.4th 1273 (D.C. Cir. 2025) ................................................................ 12

*Entergy Ark., LLC v. Fed. Energy Reg. Comm'n,*
    134 F.4th 576 (D.C. Cir 2025) .................................................................. 20

*Ethyl Corp. v. EPA,*
    306 F.3d 1144 (D.C. Cir. 2002) ............................................................... 36

*FBI v. Fikre,*
    601 U.S. 234 (2024) ................................................................ 10, 18, 20, 21

*FCA v. District of Columbia,*
    No. 24-1332, 2026 WL 275995 (D.D.C. Feb. 3, 2026) ........................... 21

*Friends of the Earth v. Haaland,*
    No. 22-5036, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023) ..................... 13

*Friends of the Earth, Inc. v. Laidlaw Env't Servs.,*
    528 U.S. 167 (2000) ................................................................................. 18

*FTC v. Standard Oil Co.,*
    449 U.S. 232 (1980) ................................................................................. 40

*Gov't of Province of Manitoba v. Zinke,*
    849 F.3d 1111 (D.C. Cir. 2017) ........................................................... 31, 40

*Hanly v. Kleindienst,*
    471 F.2d 823 (2d Cir. 1972) ............................................................... 36, 40

*\*Indep. Equip. Dealers Ass'n v. EPA,*
    372 F.3d 420 (D.C. Cir. 2004) ................................................................ 34

*Immigr. Defs. L. Ctr. v. Noem,*
    145 F.4th 972 (9th Cir. 2025) .................................................................. 22

*Immigr. Defs. L. Ctr. v. Noem,* No. 20-cv-9893,
    2025 WL 1172442 (C.D. Cal. Apr. 16, 2025) .......................................... 22

*J. T. v. District of Columbia*,
  983 F.3d 516 (D.C. Cir. 2020) ................................................................. 23

*Karst Envtl. Educ. & Prot., Inc. v. E.P.A.*,
  475 F.3d 1291 (D.C. Cir. 2007) ............................................................. 29

*\*Larsen v. U.S. Navy*,
  525 F.3d 1 (D.C. Cir. 2008) .................................................................. 23

*Louisiana v. Biden*
  ("Pause"), 622 F. Supp. 3d 267 (W.D. La. 2022) ............................... 42

*Louisiana v. Biden*,
  64 F.4th 674 (5th Cir. 2023) ................................................................. 42

*Lucia v. SEC*,
  585 U.S. 237 (2018) ............................................................................. 40

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................. 27

*\*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ............................................................... 5, 25, 41

*Marin Audubon v. Fed. Aviation Admin.*,
  121 F.4th 902 (D.C. Cir. 2024) .............................................................. 4

*Mehneh v. Rubio*,
  164 F.4th 928 (D.C. Cir. 2026) ............................................................ 21

*Nat'l Mining Ass'n v. McCarthy*,
  758 F.3d 243 (D.C. Cir. 2014) ............................................................. 35

*Nat. Res. Def. Council v. EPA*,
  559 F.3d 561 (D.C. Cir. 2009) ............................................................. 29

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ............................................................................. 25

*Oceana, Inc. v. Locke*,
  670 F.3d 1238 (D.C. Cir. 2011) ............................................................ 36, 37

*Ohio Forestry Ass'n v. Sierra Club.*
  523 U.S. 726 (1998) ............................................................ 41, 42

*Pub. Citizen, Inc. v. FERC*,
  92 F.4th 1124 (D.C. Cir. 2024) ............................... 9, 13, 15, 18, 23

*Reid v. Hurwitz*,
  920 F.3d 828 (D.C. Cir. 2019) ............................................................ 18

*Robertson v. Methow Valley Citizens Council*,
  490 U.S. 332 (1989) ............................................................ 15, 16

*Safari Club Int'l v. Jewell*,
  842 F.3d 1280 (D.C. Cir. 2016) ............................................................ 25, 26

*Samma v. Dep't of Def.*,
  136 F.4th 1108 (D.C. Cir. 2025) ............................... 13, 19, 21

*Sierra Club v. EPA,*
  955 F.3d 56 (D.C. Cir. 2020) ............................................................ 33

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
  605 U.S. 168 (2025) ............................................................ 3, 4, 23

*Sierra Club v. FERC*,
  145 F.4th 74 (D.C. Cir. 2025) ............................................................ 11

*Soundboard Ass'n v. FTC*,
  888 F.3d 1261 (D.C. Cir. 2018) ............................................................ 30, 31

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................ 35

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................ 26

*Texas v. Biden*,

646 F. Supp. 3d 753 (N.D. Tex. 2022) ................................................................ 22

*Whitewater Draw Nat. Res. Cons. Dist. v. Mayorkas,*
5 F.4th 997 (9th Cir. 2021) ........................................... 7, 30, 33, 37, 41

*Whitman v. Am. Trucking Ass'ns,*
531 U.S. 457 (2001) ................................................................ 31

## STATUTES

*Administrative Procedure Act*
5 U.S.C. § 704 ....................................................................... 5, 29, 39
5 U.S.C. § 706(2)(A) ....................................................................... 5

*National Environmental Policy Act*
42 U.S.C. § 4332(B) ................................................................ 38
42 U.S.C. § 4332(C) ................................................................ 4, 16
42 U.S.C. § 4336(B) ................................................................ 31

28 U.S.C. § 1291 ................................................................ 2
28 U.S.C. § 1331 ................................................................ 2

## Rules

Fed. R. App. P. 4(a)(1)(B) ....................................................................... 2

## Other Authorities

*DHS Appropriations Act, 2021,*
Pub. L. No. 116-260 Div. F. § 210, 134 Stat. 1182 (Dec. 27, 2021) .................. 17

*One Big Beautiful Bill Act,*
Pub. L. No. 119-21, 139 Stat. 72, 357 (July 4, 2025) ........................................ 14

*Exec. Order No. 14165
  90 Fed. Reg. 8467, 8468 (Jan. 20, 2025) ..................................................... 8, 9, 14

Removal of National Environmental Policy Act Implementing Regulations,
  91 Fed. Reg. 618 (Jan. 8, 2026) ........................................................................ 4

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| CEQ | Center for Environmental Quality |
| CFR | Code of Federal Regulations |
| DHS | U.S. Department of Homeland Security |
| EIS | Environmental Impact Statement |
| NEPA | National Environmental Policy Act |

**INTRODUCTION**

Plaintiffs attempted to challenge various now-rescinded immigration-related policies by the U.S. Department of Homeland Security (DHS), alleging that DHS failed to comply with the National Environmental Policy Act (NEPA). Plaintiffs challenged DHS's 2014 NEPA manual, nine immigration-related actions the Biden Administration took in 2021, and one alleged immigration "program." The district court correctly dismissed Plaintiffs' attack on the manual and "programmatic" claim as those items were not final agency actions under the Administrative Procedure Act (APA). Following a 2024 trial, the district court found that only one Plaintiff had standing to assert two of the remaining claims, which challenged DHS's 2021 decisions to terminate both border wall construction and the Migrant Protection Protocols (the "Protocols"), colloquially known as the "Remain in Mexico" policy. Prior to issuing a final judgment, the Trump Administration reversed course in 2025 and abandoned the termination decisions, and the district court dismissed both claims based on mootness.

Plaintiffs now try to resurrect three of their claims, claiming the agency's NEPA manual was a final agency action reviewable under the APA and arguing that the 2025 decisions terminating the previous immigration policies—which the district court correctly declared "dead and gone"—did not render their claims

1

moot. The district court's judgment dismissing Count I for lack of a final agency action and Counts II and III as moot should be affirmed.

## STATEMENT OF JURISDICTION

(A)   The district court initially exercised subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arose under the National Environmental Policy Act and the Administrative Procedure Act. Joint Appendix (J.A.) ___ [Dkt. No. 17]. As explained below, however, Counts II and III are now moot.

(B)   This Court has jurisdiction under 28 U.S.C. § 1291 because the district court entered a final judgment. J.A. ___ [Dkt. No. 97].

(C)   That judgment was entered on September 18, 2025. J.A. ___ [Dkt. No. 97]. Plaintiffs timely filed their notice of appeal on November 16, 2025, or 59 days later. J.A. ___ [Dkt. No. 98]; *cf.* Fed. R. App. P. 4(a)(1)(B).

(D)   The appeal is from a final judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

1.   Whether the district court properly dismissed Plaintiffs' challenges to DHS's 2021 decisions to terminate border wall construction and the Protocols in Counts II and III as moot.

2. Whether Plaintiffs lack standing for Counts II and III after failing to satisfy the redressability prong of standing.

3. Whether the district court properly dismissed Count I because (A) DHS's NEPA Instruction Manual is not a reviewable final agency action under the APA, (B) Plaintiffs forfeited any other argument that the Instruction Manual is reviewable, and (C) even if not forfeited, Plaintiffs' arguments fail on the merits.

<div align="center">

**PERTINENT STATUTES AND REGULATIONS**

</div>

All applicable statutes and regulations are contained in the Brief for the Plaintiffs.

<div align="center">

**STATEMENT OF THE CASE**

</div>

**I.      Legal Background.**

**A.      National Environmental Policy Act.**

NEPA establishes the process by which federal agencies must evaluate the environmental effects of certain proposed federal actions. *See Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 173 (2025). The statute "'does not mandate particular results, but simply prescribes the necessary process' for an agency's environmental review of a project." *Id*. at 177 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989)). NEPA is not meant to be a "substantive roadblock" to agency action. *Id*. at 173. "The goal of the law is to inform agency decisionmaking, not to paralyze it." *Id*. NEPA is a "purely

procedural" statute that "ensures that the agency and the public are aware of the environmental consequences of proposed projects" covered by NEPA before they occur. *Id.* NEPA directs federal agencies to prepare a detailed "environmental impact statement" (EIS) for any "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C).[2]

DHS's policy and procedures for complying with NEPA are contained in an agency directive, DHS Directive 23-01, Implementation of the National Environmental Policy Act, and a 2014 manual, Instruction Manual 023-01-001-01, Revision 01, Implementation of the National Environmental Policy Act (the "Instruction Manual"). J.A. __ [Directive 023-01, Dkt. No. 19-1]; J.A.__ [Instruction Manual, Dkt. No. 19-2]. The Directive and Instruction Manual provide "a flexible framework for implementing NEPA" to "ensure the integration of environmental stewardship into DHS decision making as required by NEPA." J.A. __ [Directive 023-01 at 1].

---

[2] The Council on Environmental Quality (CEQ) recently rescinded its NEPA regulations. 91 Fed. Reg. 618 (Jan. 8, 2026). This Court in *Marin Audubon v. Federal Aviation Administration* stated that CEQ had no lawful authority to promulgate binding NEPA regulations. 121 F.4th 902, 912, 914 (D.C. Cir. 2024), *reh'g denied,* No. 23-1067, 2025 WL 374897 (D.C. Cir. Jan. 31, 2025), *mandate stayed*, 129 F.4th 869 (Feb. 28, 2025). CEQ's regulations, which were in place at the time of the DHS policies and decisions at issue here, are not at issue in this appeal.

The Instruction Manual restates and incorporates many of the now-rescinded NEPA regulations. *See generally* J.A.__ [Instruction Manual]. While DHS is updating its NEPA procedures following CEQ's rescission of its NEPA regulations, the Instruction Manual remains valid, although it is no longer published on DHS's website.

**B.     Administrative Procedure Act.**

NEPA does not provide an independent cause of action. Instead, Plaintiffs must bring their claims under the APA. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882–83 (1990). The APA cause of action is limited—"[a]gency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). Section 706(2) permits a reviewing court to set aside final agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." *Id.* § 706(2)(A), (D).

**II.     Factual Background and Proceedings Below.**

Plaintiffs are the Massachusetts Coalition for Immigration Reform, an organization whose members favor policies that will sharply reduce immigration, and six individuals from several states who allege that immigration is causing environmental harms. In their operative complaint filed in September 2021,

Plaintiffs assert that, for decades, the federal government has chosen "to create population growth through immigration . . . yielding significant and foreseeable environmental consequences" including urban sprawl; loss of farmland, habitat, and biodiversity; and increases in greenhouse gas emissions, water usage, and pollution. J.A. __ [FAC ¶ 13, Dkt. No. 17]. As relevant to this appeal, Plaintiffs challenged nine specific "actions taken by the Biden Administration to augment the American population," including termination of border wall construction (Count II) and termination of the "Remain in Mexico" policy or the Protocols (Count III). *See* J.A. __ [FAC ¶¶ 226-252]. Plaintiffs also challenged the nine so-called "Biden Population Actions" collectively as an alleged "program" in Count XI, arguing that NEPA required the government to prepare a nationwide, programmatic EIS evaluating the environmental impacts of the policies as a programmatic action. J.A. __ [FAC ¶¶ 253-57]. Finally, Plaintiffs claim DHS "omits any mention of immigration policy" in its NEPA Instruction Manual (Count I), an internal document that guides DHS personnel on NEPA compliance but does not impose specific binding obligations on agency personnel beyond the statute itself. J.A. __ [FAC ¶¶ 220-25].

Defendants moved to dismiss Plaintiffs' First Amended Complaint in its entirety on multiple grounds. The district court dismissed Count I, finding the Instruction Manual was not "final agency action" subject to judicial review under

the APA. J.A. __ [Dkt. No. 27 at 13-16]. The district court found the Instruction Manual "is not the end of DHS's decision-making process about whether environmental analysis is required under NEPA; it is the beginning." J.A. __ [Dkt. No. 27 at 15]. And even if it were the end, the Instruction Manual merely "clarifies existing duties under NEPA" and therefore does not "create new obligations or impose legal consequences." J.A. __ [Dkt. No. 27 at 15-16] (cleaned up). The district court also dismissed the "programmatic" challenge in Count XI for failure to identify a discrete agency action. J.A. __ [Dkt. No. 27 at 17-18]. Plaintiffs' "programmatic attack essentially lumps together all actions in the ten prior counts" into one alleged program, but "labeling diffuse actions a 'program' does not a program make." J.A. __ [Dkt. No. 27 at 18]. As to both the Instruction Manual and "programmatic" claims, the district court agreed with the Ninth Circuit, which had recently affirmed the dismissal of nearly identical claims in a case brought by the same organization representing Plaintiffs here. J.A. __ [Dkt. No. 27 at 13, 17-18] (citing *Whitewater Draw Nat. Res. Cons. Dist. v. Mayorkas*, 5 F.4th 997 (9th Cir. 2021). The court otherwise denied the motion to dismiss. *See* J.A. __ [Dkt. No. 27 at 1].

Defendants then moved for summary judgment on the remaining counts. With two exceptions, the district court dismissed the claims of all Plaintiffs for lack of standing. J.A. __ [Dkt. No. 52]. The court found that it could not resolve

7

whether two Plaintiffs, Mr. Smith and Ms. Getzwiller, who both live in southern Arizona, had standing to challenge DHS's 2021 decisions to terminate border wall construction and the Protocols (Counts II and III) without a trial. *See* J.A. __ [Dkt. No. 52 at 17, 41-42]. Despite not fully resolving the threshold question of standing, the district court moved forward with a merits determination on those counts, finding that DHS's two 2021 termination decisions violated NEPA. *See* J.A. __ [Dkt. No. 52 at 34-41].[3]

Following summary judgment, the district court held a two-day trial to determine whether either of the Arizona Plaintiffs had standing. The district court found that only Mr. Smith had standing to challenge the border wall and Protocols decisions in Counts II and III, J.A. __ [Dkt. No. 81 at 1], while the other plaintiff, who did not attend trial, lacked standing. J.A. __ [Dkt. No. 81 at 26].

Having already made its merits determination before finding standing, the district court ordered briefing on the appropriate remedy. J.A. __ [Dkt. No. 81 at 34]. After the parties briefed remedy, the administration changed in 2025. And the Trump administration promptly reversed both 2021 termination decisions challenged in Counts II and III. *See* J.A. __ [Exec. Order No. 14165, 90 Fed. Reg. 8467-68 (Jan. 20, 2025)]. Following supplemental briefing on mootness, the

---

[3] None of Plaintiffs' claims against the other two federal agencies that were sued, the Department of Justice and the Department of State, survived summary judgment.

district court dismissed the remaining claims in Counts II and III as moot on the grounds that meaningful relief was no longer available. J.A. __ [Dkt. No. 96]. The court explained that now that the 2021 termination decisions have been rescinded "[a]ny further action by this Court regarding the Biden Administration's now-reversed policy cancellations 'will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" J.A. __ [Dkt. No. 96 at 6] (quoting *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (cleaned up)). The court further rejected Plaintiffs' argument that the voluntary cessation exception to mootness applied where the cessation "was driven by political considerations wholly unrelated to this case," but that in any event the claims were still moot because "there is no reasonable expectation that the alleged violations will recur." J.A. __ [Dkt. No. 96 at 9, 11].

## SUMMARY OF ARGUMENT

1.  DHS's 2021 decisions to terminate border wall construction and the Protocols (Counts II and III) are "dead and gone," J.A. __ [Dkt. No. 96 at 1], and any effective relief under NEPA is no longer available for those claims. Further, the congressional appropriations to which the 2021 border wall decision applied have long since been spent or expired. In 2025, President Trump directed DHS to build physical barriers along the southern border and resume the Protocols. J.A. __ [Exec. Order No. 14165, 90 Fed. Reg. at 8468]. DHS swiftly compiled, thereby

mooting Plaintiffs' challenges to the 2021 policies. The district court was correct that under this Court's precedents the "voluntary cessation" exception did not apply absent evidence of manipulation of the court's jurisdiction, but that even if it did, the case was still moot. J.A. __ [Dkt. No. 96 at 7-11]. Contrary to Plaintiffs' argument, the Supreme Court's decision in *FBI v. Fikre*, 601 U.S. 234 (2024), did not change the established law of this circuit that the "'voluntary cessation' exception to mootness has no play when the agency did not act in order to avoid litigation." *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021).

This Court should also reject Plaintiffs' last-ditch effort to hitch their moot termination claims either to a non-cognizable programmatic challenge to DHS's alleged NEPA policy or to their previously dismissed programmatic claim.

2. Even if Counts II and III are not moot, the Court lacks jurisdiction over those claims, because Plaintiffs did not meet their burden to establish redressability required for standing. Plaintiffs presented no evidence of redressability at trial, and the district court made no determination that those claims were redressable. Instead, the district court erroneously stated that the government did not contest that prong of Article III standing.

3. The district court did not err by dismissing Plaintiffs' challenge to the Instruction Manual in Count I. NEPA does not create a private right of action; challenges under that statute must be brought under the APA, "which authorizes

10

review only of 'final agency action.'" *Sierra Club v. FERC*, 145 F.4th 74, 89 (D.C. Cir. 2025). The Instruction Manual is not a final agency action under the two-part test established in *Bennett v. Spear*, 520 U.S. 154, 178 (1997). The Instruction Manual fails the first prong of the *Bennett* test because it does not represent DHS's "last word" with respect to any DHS action. It fails the second prong because it is an informational document that does not impose any new substantive requirements on the agency beyond those contained in the statute (and the rescinded CEQ regulations).

Plaintiffs argue that the Instruction Manual is reviewable *even if* it is not a final agency action, but Plaintiffs forfeited this argument by not raising it to the district court. "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984).

Even if the argument were not forfeited, Plaintiffs' argument fails on the merits because the Instruction Manual is not automatically reviewable just because it contains DHS's NEPA methods and procedures. Nor could the Instruction Manual be reviewable solely in the context of moot claims. Finally, even if Counts II and III were not moot, the Instruction Manual is not "preliminary, procedural, or intermediate agency action" under APA section 704 and Plaintiffs never alleged

that it was. Each of the cases Plaintiffs cite involved the review of a final agency action, which the Instruction Manual is not.

In sum, the Instruction Manual is neither a final agency action nor the procedural prerequisite to some other currently justiciable final agency action that Plaintiffs challenge. This Court should affirm the district court's dismissal of Count I.

## STANDARD OF REVIEW

This Court reviews de novo a dismissal based on mootness. *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009). And the Court reviews the district court's standing determinations de novo. *Doc Soc'y v. Rubio,* 141 F.4th 1273, 1276 (D.C. Cir. 2025). This Court also reviews de novo the district court's dismissal for failure to state a claim under Rule 12(b)(6). *Campaign for Accountability v. U.S. Dep't of Just.*, 155 F.4th 724, 733 (D.C. Cir. 2025).

## ARGUMENT

I.    **Plaintiffs' challenges to the 2021 termination of border wall construction and the Protocols (Counts II and III) are moot.**

Plaintiffs' challenges to DHS's 2021 decisions to terminate border wall construction and the Protocols in Counts II and III are moot, because the Trump administration abandoned both terminations and reversed course in 2025. "Derived from Article III, the mootness doctrine ensures that federal courts decide only

actual, ongoing controversies." *Pub. Citizen*, 92 F.4th at 1127 (cleaned up). A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Samma v. Dep't of Def.*, 136 F.4th 1108, 1113 (D.C. Cir. 2025). "At any point during a lawsuit, [the Court] must dismiss a case as moot if 'intervening events make it impossible to grant the prevailing party effective relief.'" *Friends of the Earth v. Haaland*, No. 22-5036, 2023 WL 3144203, *1 (D.C. Cir. Apr. 28, 2023) (per curiam) (quoting *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996)). A case that poses a live controversy when filed can become moot at any time before the court issuing a final judgment and "a federal court must refrain from deciding the dispute if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pub. Citizen*, 92 F.4th at 1127-28 (cleaned up). Such is the case here.

A. **Actions taken by the Trump Administration in 2025 mooted Plaintiffs' NEPA challenges to the 2021 termination decisions.**

This case became moot after President Trump took office in January 2025 and the government abandoned the challenged conduct and reversed course. This "is just the sort of development that can moot an issue." *Samma*, 136 F.4th at 1113 (quoting *Friends of Animals v. Bernhardt*, 961 F.3d 1197 (D.C. Cir. 2020)).

Upon taking office, President Trump declared that preventing illegal immigration was "[o]ne of [his] most important obligations" and promised to "marshal all available resources and authorities to stop" it. Exec. Order No. 14165, 90 Fed. Reg. 8467 (Jan. 20, 2025). This Executive Order directed DHS to "take all appropriate action to deploy and construct temporary and permanent physical barriers to ensure complete operational control of the southern border of the United States." *Id.* at 8468. The same Executive Order instructed DHS to "take all appropriate action to resume the Migrant Protection Protocols." *Id.*

DHS swiftly complied. The Secretary of Homeland Security issued multiple waivers to expedite the construction of new border wall across the southern border. J.A. __ [Dkt. No. 96 at 4] (citing multiple waivers published in the federal register for California, Arizona, and Texas). DHS announced the reinstatement of the Protocols on January 21, 2025. J.A. __ [Press Release, DHS, "DHS Reinstates Migrant Protection Protocols, Allowing Officials to Return Applicants to Neighboring Countries" (Jan. 21, 2025)].[4] After the One Big Beautiful Bill Act allocated over $46.5 billion for border wall construction, Pub. L. No. 119-21, 139 Stat. 72, 357 (July 4, 2025), DHS announced plans to build hundreds of miles of

---

[4] "The Court may take judicial notice of information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

border walls. J.A. __ [Press Release, DHS, "Six Months of Keeping America Safe Under President Trump and Secretary Noem" (July 20, 2025)].

These 2025 developments mooted Plaintiffs' claims. Whether DHS had violated NEPA in 2021when it terminated border wall construction and the Protocols was no longer a live controversy. The district court could no longer award any effective relief against those actions, as the policies were no longer in place. At most the court could issue an "impermissible advisory opinion[]" on the legality of past actions the government had not only abandoned but reversed. *Pub. Citizen*, 92 F.4th at 1127-28. Nor would it have constituted meaningful or effective relief for the court to order DHS to undertake a NEPA analysis of past termination decisions the agency had repudiated and was no longer operating under. *See Akiachak Native Cmty. v. United States Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016) (holding case became moot when the challenged regulation was repealed and there was no evidence showing it would be reenacted).

NEPA is intended to ensure that federal agencies look *before* they leap, by considering the environmental impacts of *proposed* actions before taking them. *Baltimore Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 97 (1983). Doing so serves the twin aims of informing agency decision-makers of the environmental effects of *proposed* federal actions and ensuring that relevant information is provided to members of the public *before* the actions are undertaken. *Robertson*, 490 U.S. at

349. NEPA focuses on analyzing and disclosing the effects of the "*proposed agency action.*" 42 U.S.C. § 4332(C)(i) (emphasis added); *id.* § 4332(C)(ii) (looking to adverse effects that "cannot be avoided *should* the proposal be implemented") (emphasis added). Those effects look to potential *future* actions being contemplated by the agency. By contrast, the 2021 decisions to terminate border wall construction and the Protocols were abandoned by the agency as it moves forward in a different direction. An environmental analysis of the 2021 termination decisions thus could not inform any proposed or ongoing agency action.

The Court should affirm the district court's dismissal of Counts II and III as moot.

**B.      Plaintiffs' challenge to the 2021 termination of border wall construction is also moot because the appropriations covered by that decision have now expired.**

Plaintiffs' challenge to the 2021 termination of border wall construction (Count II) is moot for another reason. All congressional appropriations covered by the discrete final agency action Plaintiffs challenge—DHS's 2021 Border Wall Plan Pursuant to Presidential Proclamation 10142—have now expired and can no longer be obligated. The 2021 plan only covered border infrastructure appropriations from fiscal years 2017 through 2021. J.A. __ [DHS_MCIR_11-15, Dkt. No. 48-2]. Each of those appropriations has now expired, and the 2021 funds

expired on September 30, 2025. *See* DHS Appropriations Act, 2021, Pub. L. No. 116-260 Div. F. § 210, 134 Stat. 1182, 1452 (Dec. 27, 2020).

The expiration of the appropriations covered by the 2021 Plan moots Plaintiffs' challenge to the plan. *See City of Houston v. Dep't of Hous. and Urb. Dev.*, 24 F.3d 1421, 1426 (D.C. Cir.) ("Because we agree that this case was mooted by the expiration of the relevant appropriation, we affirm the decision of the trial court."). Now that the covered funds have expired, vacating the 2021 plan would have no effect, because there is no more funding that *could* be obligated under the plan. Similarly, compelling a NEPA analysis of the 2021 plan would have no effect, because there is no action DHS could take under the plan now that the funds have all expired.

**C.     The voluntary cessation exception does not apply.**

The voluntary cessation exception to mootness does not apply here because DHS did not reverse the 2021 termination decisions to avoid or manipulate this litigation. And even if this were not enough, the government has established the terminated policies could not reasonably be expected to recur and therefore Plaintiffs' claims are still moot.

The Supreme Court has recognized "two principal exceptions to mootness." *Cierco v. Mnuchin*, 857 F.3d 407, 414 (D.C. Cir. 2017). The first one at issue in this appeal is when "a party voluntarily ceases the challenged activity." *Pub.*

17

*Citizen*, 92 F.4th at 1128. Under the voluntary cessation exception, "the case remains live unless it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 190 (2000)). But that exception "does not apply automatically whenever the prospect of mootness is raised by a party's voluntary conduct." *Id.* This Circuit has "declined to apply the doctrine when the facts do not suggest any 'arguable manipulation of our jurisdiction.'" *Id.* (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001)). "The established law of this circuit is that the 'voluntary cessation' exception to mootness has no play when the agency did not act in order to avoid litigation." *Alaska v. U.S. Dep't of Agric.*, 17 F.4th at 1229 (cleaned up).

In terms of which party bears the burden on mootness, this Circuit has held that "[t]he party seeking jurisdictional dismissal must establish mootness, while the opposing party has the burden to prove that a mootness exception applies." *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019). When a defendant claims that its voluntary cessation of its conduct moots a case, the Supreme Court has held that the defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190; *see Fikre*, 601 U.S. at 241. As this Circuit has explained though, this "heavy burden" is imposed "only if there is some

evidence that the party sought to manipulate the court's jurisdiction." *Samma*, 136 F.4th at 1114. Plaintiffs are therefore wrong that the government *always* bears "the formidable burden" of showing that the voluntary-cessation exception does not apply. *See* Pls.' Br. 25.

To begin with, the district court correctly found the "voluntary cessation" exception did not apply under this Court's precedents, because there was no evidence of manipulation of the court's jurisdiction. J.A. __ [Dkt. No. 96 at 8-9]. The court found there was "ample reason" to conclude that DHS's reversal of the 2021 termination decision was "driven by political considerations wholly unrelated to this case." J.A. __ [Dkt. No. 96 at 9]. Further, not only did Plaintiffs make no allegation or submit a shred of evidence to suggest manipulation, but "given the President's longstanding views on immigration and the border wall, any suggestion that he has changed tactics because of this case is risible." J.A. __ [Dkt. No. 96 at 8, 9].

Even if the government bore the burden of showing there is no reasonable expectation the previous conduct will resume, the case would still be moot. The district court did not conclude its analysis of the voluntary cessation doctrine after finding no evidence of manipulation. The court went on to analyze whether the government would meet even the "heightened" standard to show there was no reasonable expectation that the alleged violation would recur. J.A. __ [Dkt. No. 96

at 10-11]. The court found the government met even this higher standard because "any possibility of repetition hinges on a tenuous series of assumptions" including, but not limited to, who would win the next presidential election. J.A. __ [Dkt. No. 96 at 10]. In any event, Plaintiffs do not argue that the district court's analysis under the "reasonable expectation" framework was deficient and have therefore forfeited the argument. *See Entergy Ark., LLC v. Fed. Energy Reg. Comm'n*, 134 F.4th 576, 580-81 (D.C. Cir. 2025) (explaining issues not raised in an opening brief are forfeited).

Finally, Plaintiffs are wrong that the Supreme Court's 2024 decision in *Fikre*, 601 U.S. at 234, abrogates the law of this Circuit to compel the application of the voluntary cessation exception regardless of whether there is any evidence of manipulation. This Court is bound by its earlier precedents unless "intervening Supreme Court precedent . . . clearly dictate[s] a departure[.]" *Bahlul v. United States*, 77 F.4th 918, 926 (D.C. Cir. 2023). Intervening Supreme Court authority must "effectively overrule, i.e., eviscerate, the law of our circuit." *Bahlul*, 77 F.4th at 925 (cleaned up). *Fikre* does not do so, as this Court's post-*Fikre* cases make clear.

In *Fikre*, the Court held that the plaintiff's claims challenging his inclusion on a "No Fly List" were not moot because the government removed him from the No Fly List *after* he filed suit and promised not to relist him based on currently

20

available information. *Id.* at 242. The Court focused on the fact that the government did not explain the reason(s) for Plaintiff's removal or for why he was placed on the list in the first place. *See Fikre*, 601 U.S. at 239-40. As the district court correctly observed, the President's "longstanding views on immigration and the border wall" are hardly opaque. *See* J.A. ___ [Dkt. No. 96 at 9].

Plaintiff suggests that *Fikre* disturbed pre-*Fikre* circuit precedent, Pls.' Br. 26, but it has not done so. Post-*Fikre* cases reiterate that the "voluntary cessation" exception does not automatically apply any time a defendant decides to cease the challenged conduct where there is no evidence of an attempt to manipulate the court's jurisdiction. *See*, *e.g.*, *Samma*, 136 F.4th at 1114; *Mehneh v. Rubio*, 164 F.4th 928 n.* (D.C. Cir. 2026); *Albina Head Start, Inc. v. U.S. Dep't of Health and Human Servs.*, No. 25-5106, 2026 WL 473791 (Feb. 17, 2026) (per curiam); *c.f. Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 525 (D.C. Cir. 2025) (explaining that defendant had "initially triggered the voluntary cessation framework by *deliberately* attempting to moot the case") (emphasis added). In *FCA v. Dist. of Columbia*, a post-*Fikre* district court case Plaintiffs cite in their opening brief (p. 27 n.4), the court considered whether there was evidence of manipulation before proceeding in the mootness analysis and concluded defendants' actions suggested at least arguable manipulation. No. 24-1332, 2026 WL 275995, at *8 (D.D.C. Feb. 3, 2026).

In sum, the district court did not err in its determination that the voluntary cessation exception to mootness did not apply.

**D.      Plaintiffs are wrong that pending litigation challenging the resumption of the Protocols means Count III is not moot.**

Plaintiffs are wrong that their Protocols claim is not moot because the Trump administration's decision to reinstate Protocols was partially stayed by the Ninth Circuit. The Protocols are currently subject to dueling judicial stays. One court stayed the Biden Administration's rescission of the Protocols (the same outcome Plaintiffs favored), *see Texas v. Biden*, 646 F. Supp. 3d 753, 781 (N.D. Tex. 2022), while another court stayed the Trump Administration's reimplementation of the Protocols, *see Immigr. Defs. L. Ctr. v. Noem*, No. 2:20-cv-9893, 2025 WL 1172442, at *1 (C.D. Cal. Apr. 16, 2025). The Ninth Circuit subsequently limited the scope of the reimplementation stay pending appeal to current and future clients of the plaintiff organization. *See Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025), *reh. denied*, No. 25-2581 (Mar. 31, 2026). The fact that the 2025 reimplemented Protocols cannot, at least for now, be applied to a specific set of individuals associated with other pending litigation in California does not mean that Plaintiffs' challenge to the 2021 termination presents a live controversy.

Plaintiffs are also wrong that the Protocols claim is not moot because the district court could have issued either a declaration that the 2021 termination of

Protocols was unlawful or directly vacated the 2021 termination decision. Pls.' Br. 28. Start with the declaration. A declaration that opines solely on past conduct is an impermissible advisory opinion. *See Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (calling an order declaring a policy that had been eliminated illegal "exactly the type of advisory opinion Article III prohibits"). Further, if Plaintiffs' challenge to the 2021 termination of the Protocols is moot then so too is "any claim for a declaratory judgment that the specific action was unlawful." *J. T. v. Dist. of Columbia*, 983 F.3d 516, 522 (D.C. Cir. 2020) (cleaned up).

Next, Plaintiffs' suggestion that the vacatur of the 2021 termination decision could ultimately provide meaningful relief "is opaque and relies on a speculative daisy-chain of future events [such as the outcome of the California case and the next presidential election] that may or may not occur in separate litigation." J.A. __ [Dkt. No. 96 at 14]. If the relief sought does not "have a more-than-speculative chance of affecting [the plaintiff's rights] in the future" the case is moot. *Pub. Citizen*, 92 F.4th at 1128 (cleaned up). Vacatur is also not the presumptive remedy in NEPA cases after *Seven County*. 605 U.S. at 185.

In sum, the pending litigation in other districts challenging the 2021 termination of the Protocols as well as their 2025 reimplementation does not mean Plaintiffs' challenge to the 2021 termination decision is not moot.

**E. The district court was correct to reject Plaintiffs' arguments for relief based on unreviewable programmatic challenges to immigration policy.**

This Court should reject Plaintiffs' attempt to hitch their moot termination claims either to a non-cognizable programmatic challenge to DHS's NEPA policy or to their previously dismissed programmatic claim. The district court correctly rejected Plaintiffs' arguments that their (dismissed) programmatic claim entitled them to relief even if their termination claims were moot.

Plaintiffs are wrong that their alleged challenge to "an overarching policy of not performing the analysis required by NEPA" survives even if their border wall and Protocols termination claims are moot. Pls.' Br. 29-30. To begin with, Plaintiffs never brought a count "challeng[ing] DHS's underlying practice of not performing the analysis required by NEPA," *id.*, and cannot raise it now, for the first time on appeal. *Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 611 (D.C. Cir. 2020) (citing *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.")). Plaintiffs did, however, bring a claim in Count XI that DHS should have prepared a "programmatic EIS" for what they called a "population growth agenda" comprised of various immigration-related actions. J.A. __ [FAC ¶¶ 105-06, 254-57]. The district court dismissed that claim because the APA only permits review of "discrete" final agency actions, not

24

diffuse agency actions lumped together into one so-called "program." J.A. __ [Dkt. No. 27 at 17-18] ("labeling diffuse actions a 'program' does not a program make"). And at the remedy stage, the district court rejected Plaintiffs' request for programmatic NEPA review of an alleged "border security program" as an effort to revive the dismissed programmatic claim. J.A. __ [Dkt. No. 96 at 15].

Even if Plaintiffs were allowed to recast their dismissed claim for programmatic relief on appeal to encompass an alleged "overarching [NEPA] policy," such a claim is not cognizable under the APA and NEPA, because it is not a "discrete" agency action. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The Supreme Court in *Lujan v. National Wildlife Federation* rejected a broad programmatic challenge to individual agency actions, which the plaintiffs characterized as a "land withdrawal review program." *See* 497 U.S. 871, 890 (1990). The Court explained that a plaintiff "cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Id*. at 891. Such "wholesale improvement" is what the Plaintiffs seek here on appeal— that DHS's alleged "underlying practice[s]" regarding NEPA be reformed. Pls.' Br. 29-30.

Because none of Plaintiffs' proffered "programmatic" claims are cognizable, this case is nothing like *Safari Club International v. Jewell*, where several claims

remained live and an exception to the mootness doctrine applied. 842 F.3d 1280 (D.C. Cir. 2016). *Safari Club* concerned findings made by the U.S. Fish and Wildlife Service in 2014 that precluded the agency from issuing any permits that year for the importation of African elephant trophies. *Id*. at 1284. This Court disagreed that the case was moot after 2014, because the "capable of repetition" exception applied to one claim and Plaintiffs brought two other claims that were not moot. *Id.* at 1288. Here, none of Plaintiffs' claims survive to provide a basis for relief. Plaintiffs challenged a suite of isolated agency actions taken without NEPA analysis, including in Counts II and III, and their remaining two claims challenged either a non-final agency action in the Instruction Manual claim or an alleged "program" that the district court found "was not really a program." J.A. __ [Dkt. No. 96 at 15].

Finally, to the extent that Plaintiffs argue that their NEPA challenges to Counts II and III are not moot because their "procedural" injuries survive even without any ongoing environmental injuries, Pls.' Br. 32, that argument is foreclosed by *Summers v. Earth Island Institute*, 555 U.S. 488 (2009). A plaintiff alleging the deprivation of a procedural right must also allege "some concrete interest that is affected by the deprivation." *Summers*, 555 U.S. at 497. Because the 2021 termination decisions have been abandoned and reversed, there is no ongoing harm to Plaintiffs' concrete interests.

In sum, Plaintiffs are not entitled to relief through their programmatic claims, which are not cognizable.

## II. Plaintiffs did not establish redressability for Counts II and III.

Even if Plaintiffs' claims in Counts II and III are not moot, Plaintiffs never established their standing to pursue them. Article III standing is an "irreducible constitutional minimum" that places the burden on the Plaintiffs to show that they suffered (1) an injury-in-fact that is (2) fairly traceable to the challenged agency action and (3) likely to be redressed by a favorable decision from the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Here, "those facts (if controverted) must be supported adequately by the evidence adduced at trial," *id.* (citation omitted), since the district court held a trial on standing, *supra* p. 8.

Defendants consistently disputed Plaintiffs' standing, including the redressability element, throughout this litigation and at trial, but the district court never addressed the redressability arguments, mistakenly stating that "[t]he parties agree that Plaintiffs meet that last element, redressability." J.A. ___ [Dkt. No. 81 at 23]. In fact, Plaintiffs presented *no* evidence of redressability at trial, instead arguing that redressability is automatic, because "redressability is found to be the

27

case for standing if the Defendants had an obligation to do an analysis." J.A. __

[Aug. 1 Hr'g Tr. 69:17-22]. That is incorrect—for a plaintiff to have standing on a

claim of procedural injury, such as the failure to undertake a NEPA analysis, the

plaintiff must show that "there remains at least the possibility that [the agency]

could reach a different conclusion." *Ctr. for Biological Diversity v. Env't Prot.*

*Agency*, 861 F.3d 174, 185 (D.C. Cir. 2017) (cleaned up).

Here, Plaintiffs sought a declaratory judgment that DHS needed to have

prepared an EIS before rendering the 2021 termination decisions, vacatur of the

2021 termination decisions, and an affirmative injunction to restart border wall

construction and the Protocols. J.A. __ [Dkt. No. 82 at 1-3, 16]. At no point during

the many proceedings in this litigation did any Plaintiff show that a declaratory

judgment or vacatur of the challenged policies would redress a concrete injury. For

example, vacating the 2021 border wall termination decision would not have

redressed Plaintiffs' alleged injuries to their ranch lands in Arizona. Vacatur would

not have restarted construction, which was not ongoing near Plaintiffs at the time

of the 2021 termination in any event.[5]

---

[5] At the time of DHS's border wall termination decision, there was no ongoing barrier construction in Arizona funded by DHS—the agency Plaintiffs sued; all segments that were not completed were associated with projects funded by the Department of Defense. J.A. __ [Enriquez Decl. ¶¶ 6-9, 14 & Ex. A, Dkt. No. 37-1].

In sum, even if Counts II and III are not moot, this Court lacks jurisdiction over the appeal of those claims, because they are not redressable.

## III.  The Instruction Manual is not a final agency action.

NEPA challenges, like Plaintiffs' challenge to the Instruction Manual in Count I, must be brought under the APA, because NEPA does not provide any separate cause of action. *Karst Envtl. Educ. & Prot., Inc. v. E.P.A.*, 475 F.3d 1291, 1295 (D.C. Cir. 2007). The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *Nat. Res. Def. Council v. EPA*, 559 F.3d 561, 564 (D.C. Cir. 2009). Only a final agency action is reviewable.

The district court's dismissal of Plaintiffs' challenge to DHS's Instruction Manual in Count I should be affirmed because (A) the Manual is not a final agency action under the Supreme Court's two-part test in *Bennett v. Spear*, (B) Plaintiffs have forfeited the argument that the Manual is reviewable even if it is not a final agency action as a "preliminary, procedural, or intermediate agency action" under section 704, (C) even if not forfeited, Plaintiffs' argument that the Manual can piggyback on the Court's review of the now-defunct 2021 termination decisions under section 704 lacks merit both because those claims are moot and Plaintiffs do not allege that the Instruction Manual is the procedural prerequisite to DHS taking some other "final agency action" reviewable under section 706(2).

**A. DHS's Instruction Manual is not a final agency action.**

Count I of Plaintiffs' amended complaint alleges that DHS's Instruction Manual is arbitrary and capricious because it "omits any mention of immigration policy." J.A. __ [FAC ¶¶ 220-25]. The district court correctly dismissed Count I, because the Instruction Manual is not a "final agency action" reviewable under the APA. J.A. __ [Dkt. No. 27 at 13-16].

The Supreme Court has established a two-part test for determining whether agency action is final: the action must (1) "mark the consummation of the agency's decisionmaking process" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78 (cleaned up). An action must meet both prongs of the *Bennett* test to be a "final" agency action. *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018). The Instruction Manual satisfies neither requirement.

Plaintiffs' Instruction Manual claim is not novel: The Ninth Circuit affirmed the dismissal of an identical challenge to the Instruction Manual as "not the stuff of final agency decisionmaking." *Whitewater Draw*, 5 F.4th at 1008-09. "[T]he [DHS Instruction] Manual does not make any decision. Rather, it establishes the procedures for ensuring DHS's compliance with NEPA." *Id*. (cleaned up).

30

### 1. The Instruction Manual does not mark the consummation of DHS's decision-making under NEPA.

To satisfy the first prong of the *Bennett* test, the challenged agency action must represent the consummation of the agency's decision-making process. *See* 520 U.S. at 177-78. The challenged action "must not be of a merely tentative or interlocutory nature," *id.* at 178, and must represent the agency's "last word on the matter," *Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 478 (2001) (quoting *Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 586 (1980)). "The manner in which an agency's governing statutes and regulations structure its decisionmaking processes is a touchstone of the finality analysis." *Soundboard*, 888 F.3d at 1269. So too is whether the agency has "arrived at a definitive position on the issue that inflicts an actual concrete injury." *Darby v. Cisneros*, 509 U.S. 137, 144 (1993) (cleaned up). Because the Instruction Manual does not represent DHS's "'last word' on anything," including any NEPA decision related to wall building or the Protocols, the Manual fails the first prong of the *Bennett* test for finality. J.A. __ [Dkt. No. 27 at 14 (quoting *Whitman*, 531 U.S. at 478)].

Agency decision-making under NEPA generally concludes with the issuance of a decision supported by an environmental document. *See* 42 U.S.C. § 4336(b); *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1115 (D.C. Cir. 2017) ("After issuing an EIS, the agency must also issue a record of decision ("ROD") . .

. The issuance of a ROD constitutes final agency action"). Although the Instruction Manual is the product of a distinct administrative process, it is not a final decision under NEPA with respect to any DHS action. Instead, it provides "a flexible framework for implementing NEPA" to "ensure the integration of environmental stewardship into DHS decision making as required by NEPA." J.A. __ [Directive 023-01 at 1]. Rather than "arrive[] at a definitive position on the issue that inflicts an actual, concrete injury," *Darby*, 509 U.S. at 144, the Instruction Manual provides a non-exhaustive list of actions that typically require NEPA review, J.A. __ [Instruction Manual at V-9], and explains that DHS components should decide what level of NEPA analysis is appropriate for a particular action, J.A. __ [Instruction Manual at IV-1, V-1, V-2, V-4]. This Circuit has clarified that "courts should look first to the matrix of statutes and regulations governing [a] specific action" to assess whether it is final. *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 641 (D.C. Cir. 2019).

Looking at the Instruction Manual in context of the NEPA, it cannot reasonably be interpreted as DHS's "last word" on anything. The Instruction Manual is a guide that "helps DHS components make NEPA decisions; it does not tell them how—or when—they must do so." J.A. __ [Dkt. No. 27 at 14]. Nor does it tell DHS components *what* decisions to make. *See* J.A. __ [Dkt. No. 27 at 14]. "It is a manual for preparing to make NEPA-related decisions not the

consummation of the agency's decisionmaking process." *Whitewater Draw*, 5 F.4th at 1009 (cleaned up).

In sum, because the Manual does not represent DHS's "last word" for any NEPA decision, it fails the first prong of the *Bennett* finality test.

### 2. The Manual does not bind DHS with the force of law.

The Instruction Manual also fails the second prong of the *Bennett* test, because it does not determine any rights or obligations or have any legal consequences. *See* 520 U.S. at 177-78. This Court explained in *Sierra Club v. EPA* that a guidance document is not a final agency action under *Bennett* where the guidance imposes no "obligations, prohibitions, or restrictions on regulated entities," did not "subject [regulated entities] to new penalties or enforcement risks," and left to the "discretion" of regulated entities whether to use the guidance or ignore it. 955 F.3d 56, 63-64 (D.C. Cir. 2020).

Similarly, the Instruction Manual does not bind DHS components to take specific actions or impose any new substantive legal obligations on the agency. Instead, it "merely clarifies [DHS's] existing duties under [NEPA] and explains the process [DHS] suggests." *See Catawaba Cnty. v. EPA*, 571 F.3d 20, 34 (D.C. Cir. 2009). The Instruction Manual does not impose any *new* substantive requirements beyond those already contained in NEPA and the now-rescinded CEQ regulations. To the extent that the Instruction Manual references procedural requirements at all,

they are either requirements imposed by NEPA and then-operative CEQ

regulations or internal agency procedures for implementing NEPA, not new legal

requirements created by the Manual. *See, e.g.*, J.A. __ [Instruction Manual at V-1

to V-3 (covering "Procedures for Implementing NEPA")]. Although the Instruction

Manual contemplates integrating the NEPA process with other preexisting

"compliance requirements," the Instruction Manual itself imposes no such

requirements. *See* J.A. __ [Instruction Manual at IV-1]. Viewed within the context

of NEPA, the Manual is "all bark and no bite" because it has "no independent legal

authority." *Cal. Cmtys. Against Toxics*, 934 F.3d at 637.

This Court has repeatedly held that a document that merely explains what

existing law does not satisfy the *Bennett* test. For example, in *Independent*

*Equipment Dealers Association v. EPA*, this Court held that "an agency [letter]

merely express[ing] its view of what the law requires of a party," without more,

does not qualify as final agency action. 372 F.3d 420, 427 (D.C. Cir. 2004)

(quoting *AT&T v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001)) (reasoning that an

agency letter that "merely restated in an abstract setting" the agency's

interpretation of regulations was "purely informational in nature" and thus had no

legal effect). Similarly, in *Catawba County v. EPA*, this Court held that an agency

memorandum did not impose binding legal duties on anyone because it clarified

regulated parties' existing duties under the statute and explained the processes they

should follow. 571 F.3d at 34. *See also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin*, 452 F.3d 798, 808 (D.C. Cir. 2006) (courts "lack authority to review claims under the APA where an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party" (cleaned up)); *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 358 (D.C. Cir. 2017) (agency manual not a rule or final agency action because it "merely explain[ed] how the agency will enforce a statute or regulation" (cleaned up)); *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 253 (D.C. Cir. 2014) (guidance document labeled as Final, which "explains how the agency will enforce a statute or regulation," is "not a final agency action subject to pre-enforcement review").

Plaintiffs' reliance on *Calvert Cliffs Coordinating Committee v. AEC*, Pls.' Br. 14-15, is misplaced. 449 F.2d 1109 (D.C. Cir. 1971). Unlike the Instruction Manual, which imposes no obligations beyond those contained in NEPA and the then-operative regulations, the rules at issue in *Calvert Cliffs* imposed four additional obligations or limitations on the agency which the court found violated NEPA. *Id.* at 1116-29. Further, because the court did not address finality, *Calvert Cliffs*' drive-by ruling deserves little weight. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("drive-by jurisdictional rulings . . . have no precedential effect").

The other cases Plaintiffs cite have no bearing on whether the Instruction Manual is a final agency action. Pls.' Br. 18-19. Start with the Second Circuit's decision in *Hanly v. Kleindienst*, 471 F.2d 823 (2d Cir. 1972). That case, which evaluated the sufficiency of an environmental assessment supporting the government's decision to build a jail, says nothing about whether an agency's guidance document is a final agency action. *Id.* at 836. In *American Airlines, Inc. v. TSA*, the final agency action the court adjudicated (and ultimately vacated) was the agency's decision to deny the airline reimbursement for the cost of a new airport baggage system. 665 F.3d 170, 174-76 (D.C. Cir. 2011). That reimbursement decision was required by statute to adhere to a reimbursement "prioritization list" the agency was required to develop under the same statute. *Id.* at 172-73. The court of appeals held that either the reimbursement decision failed to follow the "prioritization list" or that the "prioritization list" was too vague to comply with the statute. *Id.* at 176-77.

The final agency actions at issue in *Oceana, Inc. v. Locke*, 670 F.3d 1238 (D.C. Cir. 2011) and *Ethyl Corporation v. EPA*, 306 F.3d 1144 (D.C. Cir. 2002), *see* Pls.' Br. 20, are also distinguishable, because they imposed *new* legal obligations on the agency beyond those contained in the underlying statute. In *Oceana* the final agency action was an amendment to fishery management plans. 670 F.3d at 1239. In *Ethyl*, it was a rulemaking to establish testing requirements for

36

new motor vehicles. 306 F.3d at 1146. Finally, Plaintiffs cite *Castaneira v. Noem*, 138 F.4th 540 (D.C. Cir. 2025), Pls.' Br. 21, which addressed a final agency action, the denial of a Form I-130, which the plaintiff alleged was inconsistent with a binding administrative decision on the applicable standard of proof. 138 F.4th at 548-49. None of these authorities can be extended to the Instruction Manual, which is decidedly not a final DHS action.

The district court correctly concluded that the Instruction Manual is not a final agency action, as did the Ninth Circuit in *Whitewater Draw*. J.A. __ [Dkt. No. 27 at 13-16]; *see also Whitewater Draw*, 5 F.4th at 1009 ("[t]he Manual does not augment or diminish DHS's NEPA obligations; it simply facilitates DHS's fulfillment of those obligations.").

### B. Plaintiffs forfeited the argument that the Instruction Manual is reviewable as an "intermediate procedural action."

Plaintiffs forfeited the argument that the Instruction Manual is reviewable as an "intermediate procedural action" under APA section 704. Pls.' Br. 22-25. In their opposition to Defendants' motion to dismiss, Plaintiffs argued exclusively that the Instruction Manual was reviewable as a "final rule" that meets the two-part test from *Bennett*. And Plaintiffs argued that the district court should decline to follow the Ninth Circuit's decision in *Whitewater Draw*, 5 F.4th at 997, which affirmed the dismissal of a virtually identical challenge to the Instruction Manual

on the same grounds—the manual was not a final agency action. J.A. __ [Dkt. No. 22 at 23-29 & n.9]. Plaintiffs argue for the first time in their opening brief here that the Instruction Manual is reviewable *regardless* of whether it is a final agency action under section 704. Pls.' Br. 22. Plaintiffs have forfeited this argument. *See Chichakli v. Tillerson*, 882 F.3d 229, 234 (D.C. Cir. 2018) ("But Chichakli failed to raise this argument below, and therefore it is forfeited.").

Plaintiffs try to shield their new argument from this deficiency by citing to one line in the First Amended Complaint alleging that all nine agency actions they challenged "would not have happened if DHS's Instruction Manual had set up a rational framework to conduct analysis of the impacts of immigration related actions." J.A. __ [FAC ¶ 219]. But averments made in the complaint and never raised in briefing to the district court are forfeited all the same. *See Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Employee Benefits Sys.,* 357 F.3d 62, 66 (D.C. Cir. 2004) (argument not presented to the district court ordinarily forfeited on appeal); *Air Fla.*, 750 F.2d at 1084 (same) (citing cases).

**C.    The Instruction Manual is not a reviewable intermediate procedural action in any event.**

Plaintiffs' new "intermediate procedural action" arguments lack merit in any event. First, Plaintiffs' argument that its Instruction Manual claim is reviewable under NEPA's requirement that agencies "identify and develop methods and procedures," 42 U.S.C. § 4332(B), ignores fundamental APA principles. *See* Pls.'

Br. 13-14. NEPA does not provide its own cause of action and under the APA only final agency actions are subject to judicial review. *See supra* p. 29. Since the Instruction Manual is not a final agency action, *see supra* pp. 31-37, it is not reviewable regardless of whether it contains DHS's NEPA "methods and procedures."

Second, Plaintiffs' argument that the Instruction Manual is reviewable under section 704 based on their challenges the 2021 termination decisions in Counts II and III also fails. *See* Pls.' Br. 22. To begin with, Plaintiffs' challenges to the 2021 termination decisions are moot and Plaintiff cannot bootstrap its Instruction Manual claim to moot claims over which this Court has no jurisdiction. *See supra* pp. 12-22.

Even if Plaintiffs' challenges to the 2021 termination decisions are not moot though, the Instruction Manual would not be reviewable in connection with those actions, and the district court was correct to dismiss Count I at the outset of this case. The APA provides that a "preliminary, procedural, or intermediate agency action not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. In the NEPA context, this provision renders procedural documents like an EIS subject to review in connection with a challenge to a substantive final agency action for which the document was prepared. *See Gov't of*

*Province of Manitoba*, 849 F.3d at 1115.[6] In other contexts, section 704 has been applied to allow review of preliminary proceedings that went on to produce a final order. *See, e.g.*, *Consumer Fed'n of America v. FCC*, 348 F.3d 1009, 1011 (D.C. Cir. 2003) (non-final order could be reviewed by challenging subsequent final order issued in same proceedings); *see also FTC v. Standard Oil Co.*, 449 U.S. 232, 245 (1980) (applying section 704 to review proceeding that led to FTC cease-and-desist order); *Lucia v. SEC*, 585 U.S. 237, 244-51 (2018) (reviewing earlier stages of an SEC proceeding in the final order).

Therein lies the problem. Plaintiffs do not allege that the Instruction Manual is the procedural prerequisite to DHS taking some other step that may, in turn, qualify as "final agency action" reviewable under section 706(2) of the APA. And there is no evidence in the record either that DHS relied on any guidance attributable to the Instruction Manual in making either of the 2021 termination decisions. Even if they made that allegation, there are no non-moot final agency actions before this Court. Their claim is solely that the Manual is reviewable in its own right under section 706. J.A. __ [FAC ¶¶ 220-225] (citing only section 706(2) and not section 704). Nowhere else do Plaintiffs claim that any of the actions they

---

[6] This was precisely the scenario in *Hanly*. *See* Pls.' Br. 14, 18. There, the court of appeals reviewed an environmental assessment prepared in connection with the agency's final determination to construct jail and found it to be inadequate. *Hanly*, 471 F.2d at 836.

challenge relied on any specific direction or guidance from the Instruction Manual.

*See, e.g.*, J.A. __ [FAC ¶¶ 226-231]. Counts II and III never mention the Manual.[7]

Plaintiffs also argue that the Instruction Manual is analogous to a "'specific order or regulation, applying some particular measure across the board'" and is therefore reviewable under the APA. Pls.' Br. 23 (quoting *Lujan*, 497 U.S. at 890 n.2). But the "specific order or regulation" the *Lujan* Court was describing was also a final agency action—that is why it was theoretically reviewable. *See Lujan*, 497 U.S. at 890 n.2 ("if that order or regulation is final . . . it can of course be challenged under the APA by a person adversely affected"). The Instruction Manual is not a final agency action. None of the other cases Plaintiffs cite involved review of a non-final agency action like the Instruction Manual.

Start with *Ohio Forestry Association v. Sierra Club*. 523 U.S. 726, 734 (1998). That case concerned a National Forest Management Act challenge to a

---

[7] In footnote 3, Plaintiffs overread the Ninth Circuit's decision in *Whitewater Draw*, which affirmed the dismissal of a virtually identical challenge to the Instruction Manual on the basis that it was not a final agency action. 5 F.4th at 997. Plaintiff suggests that case allows for review of the Instruction Manual in a case where the plaintiff also happens to identify a final agency action. Pls.' Br. 25 n.3. In dicta, the Ninth Circuit surmised that "[a]ny guidance that could be attributable to the Manual would be subsumed in any final decision issued by DHS on a particular matter." *Whitewater Draw*, 5 F.4th at 1008. But Plaintiffs' Instruction Manual claims in the two cases were pleaded almost identically; both were correctly dismissed for the same reasons. And there is no connection here between the Instruction Manual and any non-moot claims—i.e., Plaintiffs do not have a justiciable challenge before this Court that applied or implemented the Instruction Manual.

forest plan (itself a final agency action) that the Supreme Court held was not ripe absent a challenge to an agency decision implementing that plan. *Id.* at 732-33. Next, *American Airlines*. That case also involved the review of a final agency action, specifically the government's denial of a reimbursement request. *American Airlines*, 655 F.3d at 174-77. Finally, the two non-binding out-of-circuit cases, *Louisiana v. Biden* (*"Pause"*), 622 F. Supp. 3d 267 (W.D. La. 2022) and *Louisiana v. Biden*, 64 F.4th 674 (5th Cir. 2023). *Pause* challenged actions taken by the Department of the Interior to pause new oil and gas leases, including an unwritten policy to stop the onshore and offshore leasing process, 622 F. Supp. 3d at 284, and the cancellations of specific planned lease sales, both of which the district court determined were final agency actions. *Id.* at 292-93. *Louisiana v. Biden* concerned plaintiffs' lack of standing to challenge an executive order and an interagency working group's estimates of the social cost of greenhouse gases that were untethered to any final agency action incorporating or applying the estimates. 64 F.4th at 682-83. Finding plaintiffs lacked Article III standing, the court did not review any agency action under the APA—final or not.

In summary, the Instruction Manual is not reviewable under the APA even if it is a non-final agency action because Claims II and III are moot and the Manual is not the procedural prerequisite to any final agency action Plaintiffs challenge.

## CONCLUSION

For all these reasons, the district court's judgment should be affirmed.

<div style="margin-left: 45%;">

Respectfully submitted,

/s/ *Erika Danielle Norman*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

EMILY A. POLACHEK
ERIKA DANIELLE NORMAN
Attorneys
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3143
Erika.norman@usdoj.gov

</div>

May 29, 2026
DJ 90-1-4-16200

# CERTIFICATE OF COMPLIANCE

1.　　This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 9,679 words.

2.　　This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Erika Danielle Norman*
Erika Danielle Norman

Counsel for Appellees